JENKINS D. JONES, RESPONDENT, v. SOUTHWEST PUMP & MACHINERY
COMPANY, APPELLANT.—60 S. W. (2d) 754.

Kansas City Court of Appeals.    May 22, 1933.

*Woodruff & Gard* for respondent.

*P. E. Reeder, David R. Derge* and *Winger, Reeder, Barker, Gumbiner & Hazard* for appellant.

BLAND, J.—This is an action for the loss of services of plaintiff's wife, suffered as a result of personal injuries received by the latter in an automobile collision. Plaintiff recovered a verdict and judgment in the sum of $2,500 and defendant has appealed.

The facts show that on the morning of November 7, 1930, plaintiff's wife was riding in an automobile being driven by her daughter from Kansas City to Excelsior Springs, on a mission of the mother. The collision occurred upon Highway No. 69, when the car being driven by the daughter reached a point about half way between Kansas City and Liberty. Highway No. 69 has an eighteen foot pavement in its center with a black line running in the middle and lengthwise thereof. Plaintiff's daughter was driving the car, a Pontiac, and in the front seat with her was one Clyde Crain, who was riding as a

passenger. The mother was in the rear seat. The day was fair and the pavement dry. As the Pontiac automobile, going toward the east, emerged over the brow of a hill some 625 feet from the point of the collision a stationary Ford coach belonging to the defendant, and in charge of one Wright, its agent and servant, as driver, came into view. There was no other traffic in sight. Wright was seated in the coach, but the occupants of the Pontiac testified that they did not see anyone in the other car. The Ford was parked on the south edge of the pavement, and parallel thereto, facing east, the direction in which the Pontiac was going. One-half of the Ford was on the pavement and the other half on the dirt shoulder and opposite a mail box attached to the top of a post. Wright had stopped at the mail box for the purpose of inserting defendant's advertising matter therein and was ready to go on toward Excelsior Springs, his destination.

From the time the Pontiac came over the brow of the hill until it reached the point of the collision it was proceeding at a rate of speed of about twenty miles per hour. It was being driven upon the right-hand, or the south half of the pavement, and when it approached the Ford the driver veered it to the left in order to go around the parked car. When the front of the moving vehicle reached a point five or six feet from the front end of the Ford the latter suddenly started, turning to the left, and causing the front fenders and the hub caps of the two cars to come together. When the cars collided the driver of the Pontiac lost control of her car, and ran into a ditch some distance ahead. As a result of the collision plaintiff's wife was thrown against the rear window of the car and she was severely cut by the breaking of the glass thereof.

In traversing the space between the brow and the hill that we have mentioned, and the point of the collision the Pontiac came down and crossed a low place and was proceeding up another hill when the collision occurred. The point of the collision was about 130 feet from the brow of the second hill, which was east from the collision. From the photographs introduced in evidence it would appear that it would be difficult to see a car approaching from the other side of the second hill, or in the opposite direction from which the Pontiac was going, as there was also a downward grade on toward the east from the top of *that* hill.

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given. In view of this contention we have stated the evidence in its most favorable light to the plaintiff.

Defendant insists that section 7777 (g), Revised Statutes 1929, providing, among other things, that in municipalities no vehicle shall move from the side of a highway into the line of moving vehicles unless the highway is sufficiently free from approaching vehicles, etc.,

has no application, citing in support thereof the case of Wilhelm v. Hersh, 50 S. W. (2d) 735, and that Wright was not guilty of negligence in so moving his vehicle without warning.

The undisputed testimony shows that Wright started up his car and moved it in front of the approaching Pontiac car without any warning. While the statute has no application to the facts in this case, we are of the opinion that, at common law, the conduct of Wright, in suddenly moving his car from a standing position to a point in front of the approaching Pontiac was sufficient from which the jury could say that he was negligent, under the circumstances. [Phillips v. Henson, 326 Mo. 282; Elvidge v. Stronge & Warner Co., 181 N. W. 346; Litherbury v. Kimmet, 183 Calif. 24; Belleville v. Ingram, 230 Mich. 462; Lee v. Donnelly, 95 Vt. 121; Buckbee v. Schofield (Conn.), 143 Atl. 884.] In Budnitzky v. Am. Stores Co., 96 Pa. Sup. Rep. 21, 23, 24, the court said:

"Defendant's driver admitted that he had driven the truck out into the road, in order to get around and ahead of his companion truck, without looking to see whether any vehicle was approaching from the rear. His excuse was that the cab of the truck was so constructed that he could not look around unless he got on the running board. But that was not a valid excuse for cutting into the road ahead of plaintiff's near approaching truck.

"If he had no mirror or other device which enabled him to see the road to the rear he was operating the truck in violation of the provisions of the Motor Vehicle Act of 1919, P. L. 678, section 21. His car was parked closely behind the defendant's other truck and could not move directly ahead, but had to be driven out nearly across the roadway in order to get around the truck in front. He was bound to see that approaching traffic was not endangered by his movement before he attempted it and his failure to do so was negligence. Putting out his hand, even if it be believed that he did so, did not give him the right to cut into the road regardless of approaching vehicles."

While, in the case at bar, Wright testified that he looked, before starting his car, into his rear vision mirror and saw no car approaching, it was for the jury to say whether that looking was not negligently done, in view of the fact that approximately twenty-one seconds of time transpired between the time the Pontiac emerged from over the brow of the hill from the west until the time of the collision.

However, in connection with the contention that the demurrer to the evidence should have been sustained, defendant's main insistence is that the driver of the Pontiac was guilty of contributory negligence, as a matter of law, in attempting to pass the Ford car too near and without slackening the speed of the Pontiac and sounding a warning.

We are of the opinion that we would not be justified in saying that the driver of the Pontiac was guilty of negligence, as a matter of law, in driving so close to the Ford car. Of course, in the very

nature of things, there could be no evidence of exactly how much space the driver of the Pontiac car left between her car and the Ford in passing the latter. According to the testimony of defendant's witness, Wright, he had barely moved his car to the left when the collision occurred, his theory being that, in turning his front wheels to the left, the hub cap of his left front wheel would go under the fender of his car and he testified that his fender merely had a groove along its edge, indicating, as the collision was between the hub caps of the two cars, that he had barely begun to move and that he had not turned his wheels any appreciable extent to the left when the collision occurred. He testified that when he started up he intended, not to make an abrupt turn to the left but, as he intended to go on up the road toward the east, he started up in that direction, intending to gradually get back upon the pavement. It was Wright's opinion that he had not moved, at the time of the collision, as much as twelve inches.

However, there was other testimony tending to show that Wright's turn to the left was more or less abrupt. The occupants of the Pontiac car described the turning of the Ford car at the time of the collision in the following language: He "turned right into the highway." "He knocked us plum over on the other side of the pavement." "He turned right into the highway." "He immediately pulled in front of me or pulled into the side of my car and I threw my car over to the left." "I didn't think we side-swiped, I thought he drove into me." "He started and pulled toward the left." "He turned it (the Ford) and pulled up in front of me." "He darted right out into the side of us." The collision resulted in the hub cap of the right front wheel of the Pontiac being broken off, the left front fender being bent and the spindle arm, which operated the steering apparatus, bent about an inch and a half out of line.

The evidence shows that the Ford car was five or six feet in width. Taking the latter figure, three feet of the pavement, which was eighteen feet in width, was occupied by the Ford, leaving six feet of the nine feet of pavement reserved for eastbound traffic. If the Pontiac was as wide as the Ford, it could have passed as far as three feet from the Ford if the driver of the Pontiac had the ability to drive with the left side of the car exactly upon the black line dividing the pavement.

On cross-examination, the witness, Crain, testified:

"Q. She couldn't pass it (the Ford) and stay on the right-hand side? A. That is what she did. She could not get on the left-hand side of the slab, because it was going uphill.

"Q. Well, there was plenty of room? A. There was, and we took that room."

As before stated, the evidence indicates that the driver of the Pontiac could not have seen cars approaching from over the brow

of the hill from the east and we cannot say, as a matter of law, that she should have driven over to the north side of the black line or in the line of the westbound traffic or cars proceeding in the opposite direction. No doubt, it is negligent for a driver of an automobile, in passing a stationary car, to see how near he or she can go by without striking it. It was said in Devine v. Barton, 22 S. W. (2d) 877, 879, that in passing the overtaken car, "the overtaking car should leave reasonable space between it and the overtaken vehicle, and should not drive so close to the latter as to strike it, *especially if the over-taken vehicle has meanwhile kept along its own course.*" (Italics ours.)

The facts in that case are not like those in the case at bar, as the quotation indicates, but we think it is an authority as defendant says, that the driver of an overtaking car should not drive too close and if, as a result of driving too near to the overtaken car, a collision happens, the driver of the overtaking car is guilty of negligence. But, of course, there must be some causal connection between driving so close and the collision.

Defendant says that Wright could not have turned very far to his left in the five or six feet traversed by the Pontiac, after the occupants of the latter saw the Ford start to turn. According to Wright's testimony he looked back by the use of his rear view mirror immediately prior to taking his foot "off of the clutch" and saw no car approaching. So he must have taken his foot off of the clutch about the time, if not before, the Pontiac came over the hill. About twenty-one seconds elapsed prior to the collision after the Pontiac came over the hill. While only an instant elapsed before the collision after the Pontiac arrived five or six feet to the rear of the Ford, the jury could say from all of the testimony, that Wright had already manipulated his clutch so that the car was upon the verge of starting when the Pontiac arrived at the last-mentioned point. Of course, the testimony relative to the five or six feet distance was merely estimates, it might have been some further. We cannot say, as a matter of law, that the Ford car could not have moved two or more feet after the Pontiac reached a point five or six feet to its rear. It was not incumbent upon the driver of the Pontiac, as a matter of law, to drive immediately adjacent to the center line of the pavement. The whole matter was for the jury's attention.

Contributory negligence is a matter of defense and the burden was upon the defendant to show that the driver of the Pontiac was negligent in passing too close to the Ford car, unless plaintiff's own evidence showed contributory negligence as a matter of law. [Zumwalt v. Chi. & A. R. Co., 266 S. W. 717, 721.] There are inferences to be drawn from the testimony that the passage was not as close as defendant's witness, Wright, would indicate and, there is no question, that had not Wright turned his car, the passage would have been

safe, under the circumstances. It was for the jury to say whether the driver of the Pontiac car attempted to pass too close to the Ford.

In the case of Buckbee v. Schofield, supra, a stationary car was backed toward the center of the highway at an angle of forty-five degrees. At that time plaintiff's car was approaching not more than 100 feet away. The driver of the backing car gave no signal or warning of his intention to back it up and plaintiff's car ran into it. The court said, l. c. 885:

"Apparently the trial court concluded that because the driver of the plaintiff's automobile 'was not at all times and continually and uninterruptedly looking ahead' he was guilty of contributory negligence. There is no law requiring such perfect lookout on the part of the driver of an automobile. He was traveling over a perfectly straight road with unobstructed vision for a considerable distance and with no traffic in sight. He saw the defendant's car apparently parked near the curb he was following, a course at least twelve feet from the curb, allowing twice the room necessary to clear the parked car he was approaching at a rate of twenty-five to thirty miles per hour, which could not have been found to have been an unreasonable rate of speed under all the circumstances. The plaintiff's driver saw the signal at the intersection near the scene of the accident and saw the defendant's car parked by the curb when he was about 150 feet away. He saw it when it was backing into his path ten or fifteen feet away, too late to avoid the collision. He was under no duty to watch the car parked at the curb. The finding states that 'he was not at all times looking ahead,' but there is nothing in the finding or in the evidence before us to indicate that he was not keeping a reasonable lookout under all the circumstances. The only reasonable conclusion from the facts was that his conduct was that of a reasonably prudent man. He cannot well be charged with contributory negligence.

" 'In passing a car parked on the side of a street, a person approaching it on that side has the right to pass it on the left, if the street in front of him on that side is of sufficient width and clear of obstructions, and the passage can be made safely. . . . The well-known custom, of which we take notice, is in accord with this holding.' [Lee v. Donnelly, 95 Vt. 121, 113 Atl. 542.]"

In that case the facts show that plaintiff was driving twelve feet from the curb. While no such wide berth was given in this case, the jury could have exonerated the driver of the Pontiac car from not allowing more room on account of the fact that she had only a six foot space in which to pass the Ford car in order to stay on her side of the pavement and the jury could say that she was justified in not driving over to the left side, under the circumstances.

We have examined the cases cited by defendant and find them not in point. The facts before the court in Sullivan v. Ohlhaver Co. (Ill.), 126 N. E. 191, show that the collision occurred upon the streets

of a city (Aurora, Illinois). The driver of defendant's truck collided with the car of one Feece, who had started from a standing position at the curb. The collision caused Feece's car to be propelled forward, injuring plaintiff, who was at the rear of his own car which was parked in front of the Feece car. A recovery against the defendant was upheld. It is claimed by defendant that this case is authority for its contention that the driver of the Pontiac car, as a matter of law, was bound to anticipate that the Ford car might turn onto the highway in the line of eastbound traffic and that she should have had her car under sufficient control to enable her to avoid the collision. However, in that case the windshield of defendant's truck was obstructed by a covering over a portion of it. It was this and the negligent rate of speed at which the truck was running upon a street of a city that the court referred to, in discussing the negligence of the driver of the truck, and stated the whole matter was for the jury.

In the case of Harrison v. Bingheim (Ill.), 182 N. E. 750, cited by defendant, the collision occurred on the principal street of the city of Belleville, Illinois. The street was forty-four feet in width between the sidewalks. There was a street car track running longitudinally in the center of the street and the pavement was slick. A number of cars were parked along the curbing on both sides of the street. Defendant was driving about a foot north of the street car track when a car, parked at the curb, suddenly pulled out in front of him without notice or warning, and it became necessary for him to go to the left and around the car. In doing this he went over to the opposite side of the street and collided with plaintiff's car, going in the opposite direction from him. It was held that defendant was negligent as *a matter of law*, the court stating, l. c. 751:

"It was his duty to use reasonable care to have his automobile under such control as would enable him to avoid collision with other automobiles, whether parked along the curbing or traveling in the accustomed line of traffic."

Whether the ruling of the Supreme Court of Illinois in that case was a proper one, in our opinion, we need not say, for the reason that the facts in that case and the one before us are entirely different. In that case the collision occurred on the main street of a city where there were many parked cars at the curbs and the traffic was moving in both directions. The street was a wide one and the pavement was slippery. What one should do who is driving an automobile under such circumstances is an entirely different matter than what should be done where one is driving along a highway in the country where there is no traffic in sight and but one parked car.

It is claimed that the driver of the Pontiac car, in failing to sound a warning, came within the provisions of section 7777 (e), Revised Statutes 1929, providing that "an operator or driver overtaking and

desiring to pass a vehicle shall sound his signal device and the operator or driver of the vehicle so overtaken shall promptly, upon such signal, turn his vehicle as far as reasonably possible to the right in order to allow free passage on the left of his vehicle.'' The very wording of this statute shows that it has to do with the passing by a rear vehicle of a moving vehicle ahead in the line of traffic. The statute provides a means for an overtaking car to pass a moving overtaken car where the latter is moving in the line of traffic ahead. We deem the statute not in point. In this connection defendant cites the case of G'eisen v.'Luce, 242 N. W. 8. In that case the court was dealing with an entirely different statute than our statute. That statute reads as follows:

''The driver of a vehicle shall not drive to the left side of a center line of a highway in overtaking and passing another vehicle proceeding the same direction unless such left side is clearly visible and free of on-coming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety.''

It was held in that case that the statute applied where one was passing a vehicle in the line of traffic, and that the statute must be observed whether the vehicle ahead was standing or moving. The statute had to do with maintaining a lookout ahead for obstructing traffic on the opposite side of the road, when turning around traffic on one's own side. The purpose of our statute is entirely different, as already indicated. As far as the applicability of the Minnesota statute was concerned, it made no difference whether the overtaken car was stationary or not. However, section 7777 (e) of our statute cannot apply to an overtaken vehicle that is stationary because it provides for the turning of the overtaken car to the right. If the car is parked off to the side of the trafficway and there is ample room to pass between it and the center of the highway, as in this case, it is difficult to see how the statute could apply.

In the absence of a statute on the subject, whether it is negligence, as a matter of law, to pass a stationary car without signaling, depends upon the circumstances in each individual case. Under the circumstances in this case it was for the jury to say whether the driver of the Pontiac car was guilty of contributory negligence in failing to sound a warning. [Anderson v. Voeltz, 206 S. W. 584.] Whether the rate of speed that the driver of the Pontiac was traveling was negligent if it, in any event, could be said to be a circumstance contributing as a proximate cause to the collision, was a question for the jury.

On cross-examination of defendant's witness, Wright, he was asked if he had made a statement to one O'Dell as to how the accident happened which statement, if made, would be inconsistent with his testimony at the trial. Wright answered in the negative. This question was asked and answered without any objection being made on the

part of the defendant. In rebuttal plaintiff placed O'Dell upon the stand and asked him whether Wright had made the statement in question and the witness answered in the affirmative. Defendant moved to strike out the answer because, among other things, the question was leading and suggestive.

Defendant insists that the court erred in not striking out the answer of O'Dell, and in arguing the point as to how it was prejudiced by the answer, it says: "The question was not proper since the witness Wright could not admit in his conversation with O'Dell that the accident was his fault and bind his employer." No authority is cited and no argument is made as to why the question was prejudicial *on the ground that it was leading and suggestive,* and we might dispose of the point on this ground. But it is difficult to see how the matter could have been presented to the witness without relating to him the matter about which it was desired that Wright be impeached, and that was all that was done. There was nothing connected with the matter that violates the rule, to which there are many exceptions, that leading questions are not proper.

The judgment is affirmed. All concur.