**Rube McKINNEY, Plaintiff-Appellant,**

v.

**Thomas ROBBINS, Defendant-Respondent.**

No. 7289.

Springfield Court of Appeals.

Missouri.

Dec. 1, 1954.

Claude Arnold, Dexter, for plaintiff-appellant.

Clarence A. Powell, Dexter, for defendant-respondent.

RUARK, Judge.

The appellant, plaintiff below, suffered adverse jury verdict and judgment thereon in the Circuit Court of Stoddard County in a suit for damages growing out of an automobile-truck sideswipe collision. The

petition charged primary negligence and also that defendant was guilty under the humanitarian doctrine because of his failure to swerve to the left. The answer pleaded sole cause and also contributory negligence in that plaintiff (a) suddenly drove out from a parked position in front of defendant's truck and into a line of traffic when the defendant's truck was too close to permit such entry without danger of collision; (b) failed to give any warning of intention to pull out; and (c) failed to yield the right of way to defendant's truck, which was moving in the traffic course. At close of plaintiff's case and again at close of all the evidence defendant moved for directed verdict.

Appellant assigns as error the giving of certain of defendant's instructions and the reception of incompetent evidence on behalf of defendant. Respondent insists that plaintiff failed to make a submissible case on either primary negligence or on the humanitarian allegation.

The collision occurred at about 5 o'clock p. m. of April 25, 1951, on Sturdivant Street in the business district of Advance, Missouri, a town of six to seven hundred people. It was a bright, clear day and the sun was shining.

Sturdivant Street is one of the main streets of the town, well used by traffic and a farm-to-market highway. It runs in an east-west direction. Shortly east of the place of collision it intersects with another main street of the town. The center portion of the street was paved with a twenty-foot strip of blacktop. Along the north side of the blacktop and extending to the curb was a strip of gravel barely in excess of the width of an automobile and wide enough to permit the parking of vehicles parallel with the curb and just off the blacktop. On the south side of the blacktop was an open width of twenty to thirty feet of dirt and gravel adjacent to a park or an old cemetery. This space was not enclosed by curb and was referred to as "sort of like a parking lot."

Immediately prior to the collision, plaintiff's two-door Chevrolet automobile was parked parallel to the curb on the north side of the street, headed in a westerly direction. Two other cars were likewise parked, one in front of and one behind the plaintiff's car. These appear to have been the only cars parked along either side of the street near the scene at the time of the collision. The highway was clear at the time except for the defendant's truck, which was then approaching from the east (at the rear of plaintiff's car). Plaintiff testified that he and one Robinson, a friend or passenger, came from the walk on the north and got into his car, the plaintiff from the left side. He was not sure whether, in order to enter his car, he came around the back or front of the car. He stated, "Just as I stepped on the starter to pull out I looked back; didn't see nothing." He then pulled out at what he called just a normal speed. By his own statement he did not give any signal either by sounding his horn or by the use of arm and hand. He could not or did not estimate the distance between his car and the cars parked front and rear, but the distance between his car and the one in front was sufficient that he was able to and did drive out without backing up. As his car commenced entry upon the northern portion of the blacktop it was headed at an angle of approximately forty-five degrees and diagonally to the southwest in order to clear the car in front of him. He had, he says, reached a point on the blacktop where his front fender was approximately even with the rear fenders of the parked car ahead. Both front wheels were on the pavement and the rear portion of the car was not yet into the street. While his car was in this position, the defendant's truck, coming from the rear, struck the plaintiff's car at about the forepart of the left door and the left front fender. Plaintiff states that the defendant's truck then went off at an angle diagonally across the street and forward, where it came to rest, or was parked by the defendant, in the parking area heretofore mentioned at a point about sixty feet from the place of the collision. Plaintiff states that the first he knew of the presence of the truck was when it struck his car and that he had no idea of its speed. He could give no idea of the

interval which elapsed between the time he first looked back to the east and the time of the collision. After the collision, according to plaintiff's testimony, the defendant said in substance, "I sure hate that, because everybody said I was going to kill myself, as fast as I drive, but that's the first wreck I have had." Also, "The sun had me blinded; I didn't see you until I hit you."

Mr. Robinson, the man who was in the plaintiff's car, was not called as a witness, but plaintiff did call one Westbrook, who did not see the occurrence but verified plaintiff's testimony as to surroundings and as to the fact that the day was clear and the sun shown "directly down that street." This witness also stated that shortly after the accident the defendant said the sun had blinded him. He attempted (without objection) to fix the "point of impact" by the presence of some dirt and broken glass on the blacktop approximately midway between the center and the north edge of the blacktop (which would make it approximately five feet from the north edge).

According to the defendant, he was driving his truck in the proper traffic lane at a speed of about twenty miles per hour. He was facing the late afternoon sun and he said "the reflections of the light were bothering me to a certain extent," and that his first realization of the movement of plaintiff's car was when the front bumper of his truck was almost even with the back bumper of the plaintiff's automobile.

Considering the plaintiff's evidence and such reasonable inferences as can be drawn therefrom in a light most favorable to him, we are of the opinion that plaintiff has proved himself guilty of contributory negligence.

■ Section 304.020, RSMo 1949, V.A. M.S., entitled "Rules of the road and traffic regulations", subsection (7), provides, "In municipalities, no vehicle shall be driven * * * from the side of a highway into a line of moving vehicles, unless the highway is sufficiently free from approaching vehicles to permit such vehicle to enter the line of moving vehicles without danger of collision, and the operator or driver * * * shall give warning of his intention to proceed into the line of moving vehicles by sounding his horn * * * and by giving the signal required by the arm for turning to the right or to the left, as the case may be, and shall then proceed carefully, yielding the right of way in case of doubt to vehicles which are already in motion on the highway."

■ This statute is applicable whether or not the community of Advance was an incorporated village or city, and even though there was not a steady stream of traffic along the street at the time. It determined the question of right of way between vehicles already on the highway and those attempting to turn thereon off the side of the highway and placed the primary duty of using due care upon the latter class of vehicles. Wilhelm v. Hersh, Mo.App., 50 S.W.2d 735. Irrespective of the statute, the plaintiff would have had the duty to ascertain that the traffic lane was sufficiently clear of traffic to permit his entry thereon without danger of collision with vehicles already moving upon the same and, if necessary, to give warning of such intention to other vehicles then approaching the place. Jones v. Southwest Pump & Machinery Co., 227 Mo.App. 990, loc. cit. 992, 60 S.W.2d 754; 29 A.L.R.2d 111, Note I, § 2. Plaintiff concedes that he gave no signal or hand warning. At the time he stepped on the starter he looked back and did not see anything, whereupon he pulled out partially into the traffic lane. He did not see the truck; but the truck was there. In the space of time before the collision it could not have materialized from some hidden space. The street ran due east to the rear for at least five hundred feet before it turned. The view was open. It is not clear whether plaintiff's look to the rear was by use of the rear view mirror in his car, or by looking out the windows, or by both. The only obstruction to his view of the roadway behind, if it was an obstruction, was the automobile parked at his rear. If he relied upon his rear view mirror alone, such parked car may possibly have obscured

a portion of the highway, in which event even ordinary care would have required him to look out the left side and to continue looking until he found the way was clear. Since he was by statute prohibited from moving into the traffic line unless the highway was free from approaching vehicles, it was his duty to ascertain that it was free, and such ascertainment necessarily required that he use care to look and see. That he looked and failed to see cannot avail him, for the duty to look implies the duty to see what was there. State ex rel. Sirkin & Needles Moving Co. v. Hostetter, 340 Mo. 211, 101 S.W.2d 50; Phillips v. Henson, 326 Mo. 282, 30 S.W.2d 1065; Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935.

■ Hence we conclude that plaintiff was by his own evidence guilty of contributory negligence in moving upon the highway without using proper care to ascertain whether it was sufficiently clear and thereafter driving his vehicle upon the same in the path of defendant's approaching truck, and also in failing to give any signal of his intention so to do.

■ We are also of the opinion that the evidence, considered in its most favorable light, does not sustain the plaintiff's humanitarian allegation. The collision occurred at a time when the front of plaintiff's vehicle was on the north portion of the pavement and the rear part of the car was yet on the gravel parking space and while such vehicle was moving in a diagonal direction to the southwest. The plaintiff says he never saw defendant's truck until it struck the forepart of his, plaintiff's, automobile. Neither plaintiff nor his witness stated or gave any estimate as to the location of this truck at the time plaintiff's car commenced its movement; nor when it should have become apparent to the defendant that plaintiff's vehicle was in a position of peril; nor the distance of defendant's truck from the point of impact at that moment; nor the speed with which such truck was being driven; nor the distance which the plaintiff traveled after he set his vehicle in motion; nor the interval which elapsed after the time plaintiff set his vehicle in motion until he was struck; nor the distance from plaintiff's automobile of the other two automobiles parked front and rear. As a matter of fact, about all the plaintiff testified was that he looked to the rear as he stepped on the starter, that he pulled out, got partly onto the highway and was struck by defendant's truck. In order to gather any information on this question we are driven to the testimony of defendant alone, who states that he was driving twenty miles per hour; that light reflections were bothering him but did not blind him; that the first knowledge he had that plaintiff was moving onto the highway was when the front bumper of his, defendant's, truck was almost even with the back bumper. of plaintiff's automobile. At that time the front portion of plaintiff's automobile was diagonally in front of him and a collision was more than imminent—it was inevitable. The statement of defendant is, "I put on my brakes and pulled to the left, but it was too close." Our courts have taken judicial knowledge that some reaction time is required for the human being to see, to comprehend, and set his body in motion; and, absent evidence on such question, such reaction time has been held to be three-quarters of a second. Vietmeier v. Voss, Mo., 246 S.W.2d 785; Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495; McGowan v. Wells, 324 Mo. 652, 24 S.W.2d 633. The only evidence we have upon the question is defendant's statement that he was going twenty miles per hour. At such speed his vehicle would have traveled twenty-nine feet per second, or a distance of approximately twenty-one feet during the normal reaction time. Defendant's statement that he immediately "pulled to the left, but it was too close" is to some extent corroborated by the fact that immediately after the collision defendant's vehicle was headed diagonally and to the left across the street. Despite the fact that the evidence must be considered in a light most favorable to the plaintiff, nevertheless it is the plaintiff's burden to establish the fact that the defendant saw, or by the exercise of the highest degree of care on his part could have seen, the plaintiff after he set his. vehicle in

motion with the apparent intention to enter the highway and in a position of peril, in time that he, the defendant, could have, with the means at hand, swerved to the left and avoided the collision. The mere fact that there was a collision does not of itself justify the inference of negligence. Miller v. Wilson, Mo.App., 288 S.W. 997; Branscum v. Glaser, Mo., 234 S.W.2d 626. And to warrant a recovery the evidence must show more than a mere possibility or conjecture that defendant could have avoided the accident after he knew or should have known of the danger. Power v. Frischer, 229 Mo.App. 1056, 87 S.W.2d 692; Burton v. Joyce, Mo.App., 22 S.W.2d 890.

The facts in this case are somewhat similar to those in Sapp v. Carman Co., Inc., Mo.App., 95 S.W.2d 658. In that case it was stated, loc. cit. 660, that there was no evidence from which a jury could rightly find in what distance the oncoming truck, could be stopped by the appliances at hand and with safety to the driver, and "as the evidence in the case at bar does not disclose the distance between defendant's truck and plaintiff's car when it first became possible for the driver of the truck to see plaintiff's car when it came into or gave some outward sign of entering into the pathway of defendant's approaching truck, and as there are no facts in evidence from which it can be concluded that it would have been possible for the driver of defendant's truck to stop or slow down or swerve his truck so as to avoid the striking of plaintiff's car; there therefore is no sufficient evidence upon which to submit the case under the humanitarian rule." In this case there was no evidence that defendant could have swerved or turned his truck to the side sufficiently to have avoided the collision within the time and distance allotted to him.

For the reasons foregoing we hold that plaintiff did not make a submissible case. Such being the case, it is unnecessary to consider the assignments of error in regard to the giving of defendant's instructions. Neither is it necessary to consider the claim of error in reception of incompetent evidence on behalf of the defendant, because such evidence did not and could not have any effect upon the conclusions heretofore reached. Bello v. Stuever, Mo., 44 S.W.2d 619; O'Dell v. Dean, 356 Mo. 861, 204 S.W.2d 248; Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892.

For the reasons foregoing the judgment below is affirmed.

McDOWELL, P. J., and STONE, J., concur.