Michelle KETCHUM, by her next friend Curtis Ketchum, and Curtis Ketchum, Plaintiffs-Appellants,

v.

Dorothy HAUSDORF,
Defendant-Respondent.

No. 37728.

Missouri Court of Appeals,
St. Louis District,
Division One.

Aug. 9, 1977.

Motion for Rehearing and/or Transfer
Denied Sept. 12, 1977.

Sommers & Holloran, St. Louis, for plaintiffs-appellants.

Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, R. A. Wegmann, Ray Dickhaner, Hillsboro, for defendant-respondent.

CLEMENS, Presiding Judge.

Two-year-old plaintiff Michelle Ketchum was a passenger in a northbound, left-turning car driven by her sister Cynthia Root when it collided with the southbound car of defendant Dorothy Hausdorf. Co-plaintiff Curtis Ketchum is Michelle's father and next friend. So far as pertinent here, the jury gave plaintiffs a $12,500 verdict against defendant Hausdorf.

Plaintiffs submitted their cases disjunctively on defendant's statutory negligence in failing to sound a horn and also in passing another vehicle on the right. After the verdict defendant contended the evidence supported neither the failure-to-sound-a-horn submission nor the passing-on-the-right submission. The trial court agreed, set aside plaintiffs' verdict and entered judgment for defendant. Plaintiffs appeal, asking us to order the trial court to reinstate their verdict and judgment.

A more detailed statement of the location: Plaintiffs' car was northbound in the inside lane of Lemay Ferry Road (U.S. Highways Nos. 61–67), a four-lane highway at its intersection with Will Avenue, a two-lane east-west avenue in St. Louis County. Defendant Hausdorf was southbound in the outside lane of Lemay Ferry Road. The intersection is controlled by four green-amber-and-red overhead lights, one for each lane of Lemay Ferry Road. There are no electric signals for left turns from Lemay Ferry Road but the north and southbound traffic lanes are governed by "left turn yield on green" traffic signs. All lights were green for both north and southbound traffic at times pertinent here.

The presence of a third vehicle is material. It was a large trash truck temporarily stopped in the inside, southbound lane of Lemay Ferry Road, waiting for and signaling a left-turn to the east into Will Avenue. As the truck's driver waited, several cars passed him going both north and south on Lemay Ferry Road.

As plaintiffs' driver drove north toward the intersection and defendant drove south toward it, the standing trash truck was in their line of sight and neither plaintiffs' driver nor defendant Hausdorf saw each other.

The location and movement of the three vehicles is shown graphically:

As plaintiffs' driver moved north toward the intersection she intended to turn left from Lemay Ferry Road into Will Avenue. She stopped in the inside lane and let southbound vehicles clear the intersection. When she saw no other cars coming south she began her left turn into Will Avenue, reaching a speed of five miles an hour. Meanwhile, defendant Hausdorf was driving south in the curb lane at 40 miles an hour. As said, because of the standing trash truck, neither driver saw the other until a moment before the collision. Both drivers knew defendant's southbound car had the right-of-way over plaintiffs' left-turning car. The collision occurred in defendant's right-hand lane. Plaintiffs' car was half-way out of the intersection, partly into Will Avenue. The right front quarter of defendant's car struck the right side of plaintiffs' car.

Plaintiffs' verdict-directing instructions, with our emphasis added, required the jury to believe: "First, defendant Dorothy Hausdorf either; *failed to sound her horn* before starting to pass the truck, *or passed the truck on the right side,* and Second, defendant Dorothy Hausdorf's conduct, in any one or more of the respects submitted in paragraph First, was negligent, and Third, such negligence directly caused or directly contributed to cause damage to plaintiff . . . ."

Defendant contends the evidence did not show a breach of her statutory duty either to sound a horn or not pass the truck on its right side. Plaintiffs concede our review is limited to those two submissions of statutory violations. *Weathers v. Falstaff Brewing Corporation*, 403 S.W.2d 663 [5] (Mo. App.1966).

In support of the first submission, plaintiffs point to the fact defendant passed the standing trash truck without sounding her horn and rely on the language of § 304.016.-1, RSMo. 1969: "(1) An operator or driver desiring to pass a vehicle shall sound horn before starting to pass . . . ." Plaintiffs' sole citation is *Hill v. Torrey*, 320 S.W.2d 594 (Mo.App. 1959), where the issue was plaintiff's negligence as a matter of law. Because of widely divergent facts *Hill* does not aid us in construing the cited statutory command. There, the plaintiff without honking overtook a *moving* tractor-trailer on a *two-lane road* and collided with a preceding automobile. By contrast, we note the more factually similar case of *Jones v. Southwest Pump and Machinery Co.*, 227 Mo.App. 990, 60 S.W.2d 754 [4] (1933). There, defendant was parked partially on the right side of a two-lane road and as plaintiff began passing without honking, defendant moved out in front of and into a collision with plaintiff's passing car. In denying the applicability of the comparable statute quoted above the court ruled: "The very wording of this statute shows that it has to do with the passing by a rear vehicle of a moving vehicle ahead in the line of traffic. The statute provides a means for an overtaking car to pass a moving overtaken car where the latter is moving in the line of traffic ahead."

■ We reach the same conclusion. This rule of the road was established decades ago[1] when roads were single-laned and overtaking a moving vehicle required warning to the overtaken driver to remain on his own right-hand side of the road. We hold the quoted statute does not apply to the situation here so as to require defendant to sound a horn when passing a standing vehicle in another lane of traffic.

Plaintiffs' evidence did not make a submissible case on the submitted issue of defendant failing to sound her horn. We move on to the other submission, passing the trash truck on its right side.

■ As noted, plaintiffs disjunctively directed the jury to find for plaintiffs if defendant negligently "passed the truck on the right." To avoid passing the truck on its right side defendant would either have to *stop* (despite the open lane ahead showing a green light) or she would have to turn left into the northbound lane. Even assuming the statutory limitation on passing applies to a multi-lane highway, § 304.016.2 (1) permits passing on the right "when the vehicle overtaken is making or about to make a left turn." The trash truck was doing just that, so defendant breached no duty to plaintiffs when she passed the truck on its right side.

We conclude plaintiffs did not make a submissible case on either submitted ground. The trial court would have been justified in directing a verdict for the defendant. Not having done so, the court properly granted defendant's after-trial motion for judgment.

Judgment affirmed.

McMILLIAN, J., concurs.

RENDLEN, J., dissents in separate opinion.

RENDLEN, Judge, dissenting.

I respectfully dissent for the following reasons. At the time of the collision, defendant Dorothy Hausdorf was traveling south on Lemay Ferry Road, a four-lane highway toward its intersection with Will Avenue in St. Louis County. Traffic at that intersection was controlled by electric stop signals and as she proceeded at 40 miles per hour in the outside of the two southbound lanes, defendant's view ahead of the intersection was obstructed by a large southbound flatbed truck loaded with

---

1. See § 85.16, RSMo. 1909, and ensuing revisions for comparable rule of the road.

trash containers standing higher than the truck's cab. The trash truck, waiting in the inner of the two southbound lanes of Lemay Ferry Road, was signaling an intended left turn which would take it into the intersection and onto the eastbound lane of Will Avenue.[1] Viewing this traffic condition as she approached from the north at 40 miles per hour into an obscured intersection when only her lane was visible, defendant Hausdorf most certainly was aware that passing the trash truck on its right side without sounding her horn constituted a real danger to vehicular or other traffic then in or approaching the intersection. It should have been apparent to her that the truck, before turning left, was likely yielding to other intersection traffic. This possibility was strongly suggested by the truck's position as it stood waiting with its left blinker signal activated. As the truck waited, plaintiff's vehicle was then in the intersection turning slowly (5 miles per hour) to its left in front of the trash truck, soon to emerge into defendant's Hausdorf's field of vision and line of travel. Whether Hausdorf's act of passing the trash truck on the right at 40 miles per hour without sounding her horn and entering the intersection under those conditions, produced a foreseeable risk of harm to the plaintiff or other traffic at that place, was clearly a question for the jury.

It seems clear to me the evidence was sufficient for the jury to find that under the foregoing conditions "such movement [could not be] made in safety . . ." in violation of § 304.016.2(5).[2] On the finding of such negligence, the evidence was sufficient for the jury to further find Hausdorf's negligence caused or contributed to cause the collision and plaintiff's resulting injuries under the instructions (admittedly proper as to form) given in this case.

Plaintiff's verdict directing instruction submitted disjunctively two theories of negligence: [1] failure to sound horn; or [2] passing the truck on the right side. I have considered the law and facts as to each of these elements and find the submissions are supported by the record.

### FAILURE TO SOUND HORN

The rule for traffic control on Missouri highways requiring sounding a horn when passing is embodied in § 304.016.1:

"The following rules shall govern the overtaking and passing of vehicles *proceeding* in the same direction, subject to the limitations and exceptions hereinafter stated:

(1) An operator or *driver overtaking* and desiring to pass a vehicle *shall sound horn before starting to pass* except in cities where prohibited by ordinance;" (Emphasis added.)

It is important that the only exception to the general horn sounding mandate is that provided in the last portion of subsection (1), namely: "except in cities where prohibited by ordinance." There are no exceptions exempting an overtaking driver from the duty to sound his horn if, for example, he: (1) passes on the right, (2) passes on the left, (3) passes a vehicle waiting in a line of traffic, or (4) passes a vehicle on a multilane highway. Under the accepted canons for statutory construction, when an exception is specified in the law, an intention to exclude all others from its operation will be inferred. This principle finds expression in the ancient maxim "expressio unius est exclusio alterius." Stated otherwise, it is generally the rule that an exception in a statute amounts to an affirmation of the application of the statutes to all cases not excepted, and excludes all other exceptions. Further, "The language of the exception ought not to be enlarged in its scope by an interpretation out of accord with its ordinary meaning. As a rule, exceptions in statutes are strictly construed." *State v.*

---

1. The traffic control signal was green for north and southbound traffic on Lemay Ferry Road.

2. The pertinent portion of § 304.016.2(5) provides: "The driver of a motor vehicle may overtake and pass another vehicle upon the right only . . . *when such movement may be made in safety.*" (Emphasis added.)

All statutory references are to RSMo 1969, unless otherwise indicated.

*Breckenridge,* 219 Mo.App. 587, 282 S.W. 149, 150 (1926). This principle is found in the more recent case *City of Nevada v. Bastow,* 328 S.W.2d 45, 47–48 (Mo.App. 1959), citing 82 C.J.S. Statutes § 382: "Exceptions in a statute, as a general rule, should be strictly construed, and, at the same time, exceptions should be reasonably construed; they extend only as far as their language fairly warrants, and all doubts should be resolved in favor of the general provision rather than the exception."

Finding no exception that exempts defendant from the duty to sound her horn, we now examine cases which have affirmatively applied the statute in related situations. Section 304.016.1 has been held expressly applicable to automobiles passing on *multilane* highways. *Hinds v. Kircher,* 379 S.W.2d 607, 612–13 [10, 11] (Mo.1964). There the highway was divided four-lane U.S. 70 and the court stated it was for the jury to decide if the failure to "have sounded his horn was, under all the evidence, a proximate cause of the collision." This duty to sound a horn when passing on multilane roads was reaffirmed in *Dintelman v. McHalffey,* 435 S.W.2d 633, 636–37 (Mo. 1968) in which it was held that failure of an overtaking driver to sound his horn when passing another vehicle on the left on a four-lane highway, was "negligence in violation of the statute". The court further stated that defendant "had a duty to warn them [plaintiffs] by sounding his horn . . . of the danger he was creating by coming upon them at a sustained speed when [the driver of the lead vehicle] was slowing"; concluding "[i]t is not for this court to say that had a proper and timely warning been given by [defendant] he would not have influenced the situation of danger in any way." *Dintelman* and *Hinds* made clear that a vehicle overtaking and passing to the *left* of another proceeding in the same direction on multilane highways is required by § 304.016.1(1) to sound a horn before passing.

In a case dispositive of the issues here, *Rader v. David,* 207 S.W.2d 519 (Mo.App. 1948) the court held the statute requires sounding a horn before passing on the *right* on multilane highways. *Rader* involved a three-lane highway (U.S. 40) on which plaintiff was proceeding in a westerly direction in the middle lane of the highway and as she approached the intersection of U.S. 40 and U.S. Highway 63, she slowed to turn. Though in the middle lane, plaintiff testified she had slowed and signaled a turn to her *right*; defendant, on the other hand, stated plaintiff's vehicle, a pickup truck, had come to a halt and was "sitting there in the middle of the road and she [plaintiff] had her hand out for a *left* turn", *Rader, supra* at 522. Defendant testified that as he drove in the outside westbound lane plaintiff's truck was standing in the middle lane signaling for a *left* turn, and without sounding his horn he attempted to pass on the right. As defendant passed, plaintiff turned to her *right* (which according to defendant was quite unexpected) and collided with his vehicle. Defendant was found negligent for passing on the right and failing to sound his horn, even though plaintiff was signaling a left turn, as was the trash truck in the case at bar. The court construing § 8385, RSMo 1939,[3] a precursor of § 304.016, RSMo 1969, stated: "[defendant] had no right to pass at all without giving a proper signal of his intention to do so." *Rader, supra* at 523.

The only question remaining is whether a driver overtaking and desiring to pass (either on the right or left) another preceding in the same direction has a duty to sound the horn before starting to pass if the lead vehicle has momentarily stopped in a lane of traffic. In *Rader* the overtaken vehicle was, according to defendant's admission, "*sitting* there in the middle" (emphasis added) of a three-lane highway. As pointed out above, the court held under those facts defendant was statutorily obligated under

**3.** § 8385, RSMo 1939, in pertinent part provides as follows: "An operator or driver overtaking and desiring to pass a vehicle shall sound his signaling device and the operator or driver of the vehicle so overtaken shall promptly, upon such signal, turn his vehicle as far as reasonably possible to the right in order to allow free passage on the left of his vehicle."

§ 8385, RSMo 1939, to sound his horn when passing the "sitting" vehicle.[4] When a vehicle, pausing momentarily at an intersection in a lane of traffic of a highway, is overtaken by another traveling in the same direction, the lead vehicle though pausing at the intersection *is* "proceeding" in the same direction as the following vehicle, as that term is used in § 304.016.1. This question was in effect decided by *Rader* and that case is controlling here.[5] It cannot be said the driver of an overtaking vehicle is relieved of his duty to signal before passing when the overtaken vehicle is momentarily stopped on the highway as in the case at bar.[6]

Assuming arguendo that failure to sound a horn when passing a vehicle momentarily pausing on the highway at an intersection in violation of § 304.016.1 is not negligence as a matter of law, the jury, if it found defendant did not sound her horn, could examine the circumstances and determine if defendant's conduct constituted negligence. Those circumstances include the evidence of defendant's car entering an intersection at 40 miles per hour and passing a truck on its right when defendant's vision of the intersection was blocked by a vehicle which was apparently yielding the right-of-way to others approaching or then in the intersection. The jury found that failure to "sound her horn" was "negligent" conduct, which supports the verdict. I would reemphasize that by adding paragraph Second:

"Second, defendant Dorothy Hausdorf's conduct, in any one or more of the re-

spects submitted in paragraph First, was negligent, . . . ."

in instruction # 6, plaintiff is not requiring that the jury find the statutory violation constitutes negligence as a matter of law but instead calls for a finding that failure to sound a horn was, under the circumstances, negligent.

It should be kept in mind that "Statutory rules of the road set merely a minimal rather than a maximal standard of care, and they are not necessarily preclusive of common law negligence." *Lafferty v. Wattle,* 349 S.W.2d 519, 526 [11] (Mo.App.1961).

If as the majority holds, the statute is inapplicable because the trash truck had momentarily paused on the highway, I would rule the case was nevertheless properly submitted under the common law and should thus be affirmed.

The majority, in support of its position that the statute did not require the defendant to sound a horn when passing a standing vehicle in another lane of traffic, cites *Jones v. Southwest Pump and Machinery Co.,* 227 Mo.App. 990, 60 S.W.2d 754 [4] (1933). That case is not controlling for three reasons.

*First :* The case is clearly distinguishable on its facts. The court, in *Jones* held that a vehicle traveling a two-lane road is not required to sound its horn when passing a vehicle parked at the side of the road. The overtaken vehicle was, "parked off to the side of the trafficway"[7] with "ample room

---

4. Defendant Hausdorf's duty to sound her horn was not only to warn plaintiff of her approach but also the trash truck because it might have turned to its right into defendant as did the overtaken car (though signaling a left turn) in *Rader.*

5. In *Rader,* Highway 40 was a 3-lane highway while here, Lemay Ferry Road was a 4-lane highway. This factual difference in no way lessens defendant's duty to sound her horn.

6. This rationale appears in the decisions of other jurisdictions. For instance, *Chapman v. Trump,* 10 Terry 110, 110 A.2d 308 (Del.Super. Ct.1954), held that an overtaking vehicle was statutorily obligated to sound a warning when passing a vehicle that had stopped in a lane of traffic and ruled a Delaware statute, Title 21,

Sec. 4133(b) of the Code of 1953, requiring sounding a horn "before passing . . . a vehicle *proceeding in the same direction*" (emphasis added) was applicable. The court ruled the "stopped" vehicle was "proceeding" in the same direction as that term is used in the statute. The case is squarely in point on the issue at bar.

7. The opinion in *Jones* further described the position of the Ford car as follows, "The Ford was parked on the south edge of the pavement, and parallel thereto, facing east, the direction in which the Pontiac was going. One-half of the Ford was on the pavement and the other half on the dirt shoulder and opposite a mail box attached to the top of a post."

to pass between it and the center of the highway." *Jones, supra* at 758. A car parked at the side of the road is not comparable with the facts here in which the lead vehicle was momentarily pausing at an intersection on the inner lane of two southbound lanes of traffic before proceeding and turning into the intersection. The two situations present quite different traffic problems to overtaking drivers.

*Second* : The 1929 statute, § 7777[e], relative to sounding a horn which was the basis of the decision in *Jones,* has been radically altered in subsequent enactments. The present statute, § 304.016, is different in form, content and essential effect. The court held the duty to sound a horn under § 7777[e] RSMo 1929, did not apply to an overtaken vehicle parked at the side of the road because § 7777[e] provided that "an operator or driver overtaking and desiring to pass a vehicle shall sound his signaling device and *the operator or driver of the vehicle so overtaken shall promptly, upon such signal, turn his vehicle as far as reasonably possible to the right in order to allow free passage on the left of his vehicle."* (Emphasis added.) The court went on to say "the very wording of this statute [ i. e., portion emphasized above] shows it has to do with the passing by a rear vehicle of a *moving* vehicle ahead in the line of traffic." The emphasized portion of § 7777 [e] has been removed and is not a part of § 304.016.1(1), the applicable section here. This tells us the *Jones* court would reach a different result if it had been presented the instant facts under the present statute, since the basis for the court's interpretation of the statute has been deleted from the current section.

*Third* : *Jones* is not controlling because the Kansas City Court of Appeals, (now the Missouri Court of Appeals, Kansas City district) which decided *Jones* in 1933, under § 7777[e] RSMo 1929, reached quite a different result in 1948 when deciding *Rader* , under § 8385 RSMo 1939. Though the cited statutory sections are identical, the *Radar* court under the facts set forth above held that the overtaken vehicle must sound its horn when passing a vehicle on its right, momentarily stopped in the center lane of the highway. Thus the court in the later case ruled that, in spite of the emphasized portion of § 7777[e] which also appears in § 8385 RSMo 1939, an overtaking driver *is required* to sound his horn when passing a vehicle which has stopped or paused in a lane of traffic. The pertinent facts in *Rader* are strikingly similar to those of the instant case. The *Jones* facts are not. The statute today has been markedly changed. For these reasons *Jones* has no precedential quality for this case and to the extent it might appear contrary to *Rader,* we must consider *Jones* overruled by the later case.

## PASSING ON THE RIGHT

Concerning traffic regulations, "[t]he foundation of legislative intent is to require users of motor vehicles upon public highways to exercise the highest degree of care. VAMS § 304.010". *Lafferty, supra* at 526. The statutory regulations for motor vehicles *passing* on Missouri highways are found in § 304.016.[8] Section 2 provides that passing on the right is permitted *only* under conditions enumerated in subsections (1) through (5) of that section. Here defendant Hausdorf could pass the trash truck on

---

8. Pertinent portions of 304.016 are as follows:
.1 The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to the limitations and exceptions hereinafter stated:  .  .  .
.2 The driver of a motor vehicle may overtake and *pass to the right of another vehicle only* under the following conditions:
  (1) When the vehicle overtaken is making or about to make a left turn.
  (2) Upon a city street with unobstructed pavement of sufficient width for two or more lines of vehicles in each direction.

  (3) Upon a one-way street.
  (4) Upon any highway outside a city with unobstructed pavement of sufficient width and clearly marked for four or more lines of traffic.
  (5) The driver of a motor vehicle may overtake and pass another vehicle upon the right *only under the foregoing conditions when such movement may be made in safety.* In no event shall such movement be made by driving off the paved or main traveled portion of the roadway. (Emphasis added.)

the left because the trash truck was "about to make a left turn", § .2(1), on a four-lane highway, § .2(4). However, she violated the clear prohibition of the statute that she could pass upon the right "when such movement may be made in safety", § .2(5). There are circumstances described in the statute under which passing on the right is permitted, but those circumstances are few and passing vehicles may not so proceed except "when such movement may be made in safety." The prior statute § 8385 RSMo 1939, permitted passing on the right in situations similar to those enumerated in the present law but added such passing vehicles "shall slow down and proceed cautiously". Thus passing on the right was permitted if the driver slowed and proceeded with caution. The present statute narrows the driver's option and he may not pass on the right unless he first determines it is safe so to do. This expresses a legislative concern for what is not the usual and is also a potentially dangerous manner of passing.

The Supreme Court of Missouri in *Willhite v. City of St. Louis*, 359 Mo. 933, 224 S.W.2d 956 (1949) considered a passing on the right case under then Section 8385[e] in which the defendant, proceeding in the outside of two southbound traffic lanes as in the case at bar, passed a momentarily stopped car, which had paused in the inside southbound lane. The overtaken car driven by Jenkins [9] was proceeding south on Kingshighway in St. Louis and immediately after it passed the intersection of "Ridge Avenue", a cross street, Jenkins slowed and stopped in the block south of Ridge. Defendant, in the outside southbound lane could observe the Jenkins' car's movement, nevertheless passed on the right, striking the 6 year old plaintiff who was crossing Kingshighway from east to west in front of Jenkins' car. Though defendant was proceeding south on Kingshighway, (not at an intersection) and was entitled to proceed as much or more than defendant Hausdorf here, the court in *Willhite* at 957 stated "[W]e cannot hold that *it is always negligence* as a matter of law, under all circum-

stances to pass on the right; *although usually it is*". (Emphasis added.) The court reversed the plaintiff's judgment, remanding for further proceedings because the plaintiff's verdict directing instruction told the jury that defendant was guilty of negligence as a matter of law if they merely found he "was passing on the right side" of the stopped automobile. It was explained by the court that "there are circumstances under which it might not be negligence to pass another automobile on the right . . . ." and thus the instruction was defective. The instruction here has no such infirmity, as the jury was instructed that if they found defendant passed on the right and *that such action was found to be negligent* and this negligence was casually connected to plaintiff's injury, the verdict must be for plaintiff. The *Willhite* court found plaintiff had made a submissible case and only the instruction error caused the reversal and remand. Plaintiff here made an equally submissible or perhaps stronger case and under the proper instructions given, the plaintiff's verdict should be reinstated and judgment entered thereon. There can be no doubt that the passing regulation statute is for the benefit and protection of all persons and vehicles using the roadway at or near the intersection described in evidence. The majority mistakenly suggests that defendant Hausdorf, because the light was "green" could pass on the right, but ignores the fact she proceeded into the intersection at 40 miles per hour without knowing or manifesting caution for the danger to plaintiff then crossing in front of the trash truck, just as the defendant in *Willhite* passed on the right not knowing of the plaintiff's walking in front of the stopped Jenkins' car.

The majority would excuse the conduct on the grounds that defendant would have to stop or turn and pass the truck on its left to avoid passing on the right. Perhaps Hausdorf should have come to a stop, but at the very least if she passed on the right she should have slowed, sounded her horn and

---

**9.** There was an outside or third southbound lane but cars were parked on the west side and narrowed Kingshighway so only 2 southbound lanes were open for traffic.

proceeded with caution. The statute mandates she should not have passed on the right at all unless passing could "be made in safety". From this the jury could and did properly find defendant did pass the trash truck on the right and that under the circumstances was negligent.

Finally, defendant's passing on the right and failure to sound a warning horn raised a jury question whether such conduct directly caused or contributed to cause the injury to the two year old plaintiff, a guest in the car already in the intersection turning left in front of the trash truck.

. I would reverse and remand the cause with direction to reinstate the plaintiff's verdict and enter judgment thereon.