HARRY LARSEN v. MINA MARY WEBB, W. S. WEBB, MRS. W. S. WEBB, Appellants.—58 S. W. (2d) 967.

Division One, March 16, 1933.

*Morrison, Nugent, Wylder & Berger* for appellants.

*Cowgill & Popham, Rush L. Fisette* and *H. G. Pope* for respondent.

FERGUSON, C.—Plaintiff, respondent here, brought this action in the Circuit Court of Jackson County, Missouri, for damages, in the amount of $30,000, for personal injuries which he alleges he sustained when an automobile, owned by defendants W. S. Webb and Mrs. W. S. Webb, husband and wife, and being driven in an alleged negligent manner, by their daughter, defendant Mina Mary Webb, as their agent, collided with an automobile driven by plaintiff

at the intersection of Indiana Avenue and Seventh Street in the city of Lawrence, Kansas.

The trial resulted in a verdict for defendants. Upon plaintiff's motion the verdict was set aside and a new trial granted. Defendants appealed from the order of the court granting a new trial.

The sole ground, specified of record by the trial court, for granting a new trial is, "that error was committed in the giving of Instruction P," which the court gave at request of defendants. The instruction is as follows:

"The court instructs the jury that the burden of proof rests upon the plaintiff to prove to your reasonable satisfaction by the greater weight of all the credible evidence in the case that defendants were guilty of negligence as submitted to you in other instructions herein. By the greater weight of the credible evidence is meant the greater amount of evidence which you believe to be truthful and accurate; and in this connection *you are instructed that if you believe any person testifying in this cause to have willfully sworn falsely to any fact or circumstance then you are at liberty to disregard all or any part of the testimony of such person."* (Italics ours.)

The propriety of giving an instruction, in this case, applying the maxim, *"Falsus in uno, falsus in omnibus,"* as attempted in the italicized portion of the foregoing instruction, was not challenged by the plaintiff. The testimony of plaintiff and two of the defendants is so sharply contradictory and at variance as to the material facts that plaintiff seems to concede that an instruction correctly advising the jury as to the principle laid down in this maxim was warranted. But the alleged error, in the italicized portion of the instruction, of which plaintiff complained and which the trial court found and specified as a ground for granting a new trial, is that the instruction is too broad, fails to limit the false testimony to any material fact in the case and authorizes the jury to disregard the entire testimony of a witness if they believe the witness has sworn falsely as to any statement he may have made though such matter is not connected with or material to the decisive issues and questions involved. In 14 Ruling Case Law, page 736, we find this statement: "It has been uniformly held that it is error to instruct them (the jury) that if they find a witness has testified falsely in one part of his testimony, they may disregard the whole of the testimony of such witness, without limiting the word 'falsely' by a qualifying word such as 'knowingly,' 'wilfully,' or 'corruptly,' *and without adding the further limitation 'upon a material matter.'"* The authorities consistently hold that, in cases in which such an instruction is proper, the jury should be informed that the false testimony must be as to a material fact. *"'Falsus in uno, falsus in*

*omnibus,'* is recognized as one of the leading maxims of legal jurisprudence. From the early history of our State to the present time, the principle of law announced in the above maxim has been recognized as being properly presented'' by an instruction advising the jury "that if you believe any witness has knowingly" (or wilfully or intentionally) "sworn falsely to any material fact" you are at liberty to disregard all or any part of such witness's testimony. [State v. Hamilton, 304 Mo. 19, 263 S. W. 127, and cases there cited.]

■ However it is not essential that the word "material" be used and a failure to use that particular word does not make the instruction erroneous "if the same meaning is conveyed by other equivalent expressions," or language. [First National Bank v. Minneapolis & N. Elevator Co., 11 N. D. 280, 91 N. W. 436.] In Hart v. Hopson, 52 Mo. App. 177, the instruction was that if the jury believed "any witness has wilfully sworn falsely as to any of the facts mentioned in the instructions herein, as bearing on plaintiff's alleged claim or defendant's defense thereto, then you are at liberty to disregard entirely the testimony of such witnesses." It was held that the instruction limits the false testimony to the "hypothetical facts stated in the instructions" and therefore to material facts in the case. ■ In the instruction under examination neither the word material was used nor any equivalent expression or language but the jury was told "that if you believe any person testifying in this cause to have wilfully sworn falsely to *any fact or circumstance* then you are at liberty to disregard all or any part of the testimony of such person." [See White v. Lowenberg, 55 Mo. App. 69, and Lloyd v. Meservey, 129 Mo. App. 636, 108 S. W. 595.] We are constrained to hold with the trial court that the instruction, as given, was erroneous.

■ But defendants, appellants here, contend, that although the instruction was erroneous plaintiff's motion for a new trial should have been overruled; that under the evidence and the law of Kansas, as defendants say same is declared by the decisions of the Supreme Court of that State which they cite, no case was made for submission to the jury and that the instructions in the nature of demurrers to the evidence, asked by defendants at the close of all the evidence in the case, should have been given. Liability must be determined by the law of Kansas and if sufficient evidence is not found in the record to make out a submissible case under the applicable law of Kansas then the court should have directed a verdict for defendants. In such situation plaintiff would not have been entitled to a new trial for he could not have been prejudiced by the erroneous instruction. [Trainer v. Sphalerite Mining Co., 243 Mo. 359, 148 S. W. 70.]

The challenge defendants thus make to plaintiff's case requires

that we look to the evidence. The collision occurred in the intersection of Seventh Street and Indiana Avenue, in the city of Lawrence, Kansas, between one-thirty and two o'clock in the afternoon of October 24, 1927. Indiana Avenue runs north and south, Seventh Street east and west. Both streets are paved. Indiana Avenue is thirty-five feet wide and a single street car track runs north and south in the center of the avenue. East of Indiana Avenue, Seventh Street is about thirty-five feet wide but west of the avenue is only about twenty-seven feet wide, the north curb line of Seventh Street west of Indiana Avenue being four feet south of the north curb line east of Indiana and the south curb line, west of Indiana being four feet north of the south curb line east of Indiana. There were no stop signs at the intersection. Victory Highway, a cross-state highway, in passing through Lawrence, is routed along and upon Seventh Street. Plaintiff was traveling upon Victory Highway from Kansas City, Kansas, to his home in Florence, Kansas. He left Kansas City, Kansas, at eleven o'clock A. M., traveling alone, driving a 1924 model Dodge roadster. Plaintiff testified that all of the cylinders of his automobile were "scored" but that two were in such bad condition that fifteen miles an hour was about the maximum speed at which the car could be driven and that he was "driving all the time" from eleven o'clock A. M., when he left Kansas City, Kansas, a distance of forty-six miles, until the collision, more than two and one-half hours later. The defendants, Mr. and Mrs. Webb and their daughter Mina Mary Webb resided in Kansas City, Missouri. During the morning of that day Mrs. Webb and the daughter, Mina Mary, traveling in a Buick sedan automobile owned by Mr. and Mrs. Webb, went to Lawrence, to inspect antique furniture and china, which had been advertised for sale by a Mr. Elwell of Lawrence, intending to make purchases therefrom for the family home if such articles were found to be satisfactory. The Webb car was being used for that purpose with Mr. Webb's knowledge and consent. The daughter drove the car on this trip. The mother and daughter called at the Elwell residence, viewed the furniture and china offered for sale and purchased some china. Afterwards, accompanied by Elwell, they went for a drive in the Webb car to points of interest in Lawrence. Neither Mrs. Webb nor the daughter Mina Mary were familiar with the streets. Mrs. Webb was seated in the rear seat and Elwell sat in the front seat with Mina Mary who was driving the car. Elwell directed the driver as to the route she should take. They were returning to the Elwell residence traveling north on Indiana Avenue when the collision occurred. A state statute provides that "when crossing an intersection of streets within any city or village, motor vehicles shall not be driven at a speed exceeding six miles per hour." A

city ordinance provides that: ''Whenever vehicles approaching each other on different streets shall reach the intersection of such streets a't or about the same time the vehicle on the right shall have the right of away.''

Plaintiff testified that as he proceeded west on Seventh Street and Victory Highway, driving on the north and right side of the street, near the right hand curb, at a speed of about fifteen miles an hour, and approached the intersection of Seventh Street with Indiana Avenue and while yet about twenty-five feet from and east of the east curb line of Indiana Avenue, he first saw the Webb car approaching from the south; that the Webb car was then about 150 feet south of the south curb line of Seventh Street; that when he reached Indiana Avenue and entered upon the intersection the Webb car was then about 100 feet south of Seventh Street; that he continued across the intersection, without sounding the horn and at the same speed of about fifteen miles an hour; that on account of the ''jog'' in the west curb line of Seventh Street caused by the narrowing of the street west of Indiana Avenue he turned his car slightly to the left but continued to travel north of and to the right of the center line of the street; that from the time he entered the intersection, when the Webb car was yet 100 feet south of Seventh Street, he continued to ''glance'' at that car; that as he reached the center of the intersection the Webb car was about fifty feet south and he then realized that it was coming through the intersection and was traveling at a speed of thirty-five or forty miles an hour; that he tried to increase the speed of his car to get out of the path of the Webb car but on account of the defective cylinders could not; that he had entirely crossed over the single street car track in the center of Indiana and was west thereof; that the Webb car, without any slackening of speed, continued through the intersection and, just before striking his car, swerved to the left then crashed into his car, striking the left rear wheel and left rear fender; that at the time the Webb car struck it was traveling thirty-five or forty miles an hour; that the collision occurred in the northwest portion of the intersection, and west of the center line and on the left side of Indiana Avenue going north as the Webb car was traveling; that when his car was struck the front part of his car was already in Seventh Street west of Indiana and ''the rear wheels were even with the west curbing'' of Indiana Avenue; that the Webb car struck with such force that his car was knocked and hurled around so that it faced to the east and that his car was so close to the curb at the junction point of the north curb line of Seventh Street and the west curb line of Indiana that as the car was hurled around the right rear wheel was smashed against the curb and broken. Witnesses who were in nearby houses, hearing the crash of the collision and

going immediately to the scene, arrived before plaintiff's car was moved and found it "up against the curb at the northwest corner of the intersection, clear up against the curb and telephone pole," entirely in Seventh Street west of Indiana and "facing east" with the front wheels "near the corner." Plaintiff was found "slumped" over the wheel and unconscious. Plaintiff was taken to a hospital and claims to have received permanent injuries concerning which there was much testimony. That is not however pertinent to the questions involved in this appeal. As a witness for defendants Elwell said, that for a distance of 100 feet south of the south curb line of Seventh Street Mina Mary Webb, the driver, of the Webb car, could have seen plaintiff's car approaching the intersection on Seventh Street from the east "if she had looked;" that when the Webb car was yet twenty feet south of the south curb line of Seventh Street he saw plaintiff's car and called to Miss Webb to "look out" and that she "threw out the clutch, put on the brake and turned toward the west." Mina Mary Webb testified that as she came near the intersection she was expecting directions from Elwell as to the route and as to whether she should turn east on Seventh Street; that she was driving at the rate of about fifteen miles an hour as she approached the intersection and that before entering the intersection she looked first to the right and then the left and seeing no cars approaching from either direction continued into the intersection at a speed of about fifteen miles an hour; that when the front of her car was "close to the center of Seventh Street" she, for the first time, saw plaintiff's car coming west on Seventh Street and it was then east of Indiana Avenue; that she thereupon "put on the brake and turned to the left;" that she did "not believe her car was even moving" at the moment of the impact and that the collision occurred west of the center line of Indiana and north of the center line of Seventh Street. Mrs. Webb testified, that as their car came to the intersection she did not see any car approaching on Seventh Street and that their car was "well into the intersection and going north" when she "first saw" plaintiff's car coming from the east and that plaintiff's car was so close then "that in an instant we were collided," "it came like a shot out of a gun."

Defendants, appellants, urge, that the evidence conclusively shows plaintiff guilty of negligence "constituting a proximate cause of the collision," that we should so declare as a matter of law and that under the law of Kansas such negligence on the part of plaintiff bars recovery upon any theory. In this connection appellants say that though defendants' negligence was a proximate cause of the collision that plaintiff's negligence continued to the very moment of the collision and concurred with the negligence of defendants as a proximate cause of the collision and therefore plaintiff's case

fails even under the last clear chance rule of Kansas, citing: Jamison v. Atchison, Topeka & Santa Fe Ry. Co., 122 Kan. 305, 252 Pac. 472; Coleman v. Atchison, Topeka & Santa Fe Ry. Co., 87 Kan. 190, 123 Pac. 756; Himmelwright v. Baker, 82 Kan. 569, 109 Pac. 178; Dyerson v. The Union Pac. Railroad Co., 74 Kan. 528, 87 Pac. 680; Crowder v. Williams, 116 Kan. 241, 226 Pac. 774; Martin v. Weigand, 113 Kan. 611, 215 Pac. 1023.

■ For the purposes of this opinion we shall accept appellants' construction and application of the decisions of the Supreme Court of Kansas as correct without discussing the decisions of that court which, plaintiff, respondent, cites and holds to be applicable, but we think the foregoing summary of the testimony demonstrates that a submissible case was made under the Kansas law, as same is stated by appellants, and that an analysis of the evidence is not required. One argument made by defendants in support of their contention that the evidence conclusively shows plaintiff guilty of negligence constituting a proximate cause of the collision is that plaintiff admitted that he entered and continued to travel across the intersection to the point of collision at a speed of about fifteen miles an hour when the State statute limited the speed of motor vehicles in crossing such an intersection to not exceeding six miles an hour. The generally accepted view is that a violation of such a statutory regulation constitutes negligence *per se* "for the reason that nonobservance of what the Legislature has prescribed as a suitable precaution is failure to observe that care which an ordinarily prudent man would observe." [45 C. J. 720, 721.] ■ But there must be a causal connection between such negligence and the injury and it must appear that plaintiff's violation of the speed regulation was a proximate cause of the collision, i. e., had he complied with the statute the collision would not have happened. Upon the evidence we cannot declare as a matter of law that the violation of the statute was a proximate cause of the collision. It was for the jury to determine, as they were instructed in this case, whether plaintiff's negligence, in violating the speed regulation, was a proximate or a remote cause. "In determining what constitutes proximate cause the same principles apply whether the alleged negligence was a violation of a statutory duty or the violation of some duty under general principles of law." [45 C. J. 904.]

Under the city ordinance if plaintiff's car was first to reach the intersection or if the two cars reached the intersection at about same time, plaintiff had right of way. When plaintiff's version of the events, together with the inferences, warranted by the evidence, most favorable to plaintiff's case, is considered a case for the jury was made. If we disregard and reject the evidence favorable to plaintiff and accept only the evidence favorable to defendants

plaintiff would have no case but that would involve the weight of the evidence and the credibility of the witnesses which is the exclusive province of the jury.

We have held that Instruction P, given at defendants' request, was erroneous and as the trial resulted in favor of defendants the presumption is that the error was prejudicial. [Moloney v. Boatmen's Bank, 288; Mo. 435, 232 S. W. 133.] The order of the trial court granting a new trial is therefore affirmed and the cause remanded. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.