Kim HINDS, Appellant,

v.

Allen C. KIRCHER, Respondent.

No. 50065.

Supreme Court of Missouri,

Division No. 1.

May 11, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied June 8, 1964.

.

608

Chopin & Boisaubin, George D. Chopin, St. Louis, John Canestraight, Jr., Columbia, Duncan R. Jennings, Montgomery City, for appellant.

Robert C. Smith, Smith & Lewis, Columbia, Walter D. McQuie, Jr., Montgomery City, Smith & Lewis, Columbia, of counsel, for respondent.

COIL, Commissioner.

Kim Hinds sought to recover $50,000 for alleged personal injuries he received and $25,000 for the averred wrongful death of his wife as a result of the claimed negligence of defendant, Allen Kircher. A jury found for defendant and plaintiff appealed from the ensuing judgment. Appellant contends the trial court erred in giving defendant's contributory negligence instructions 5 and 6.

The unfortunate accident, the subject of this litigation, occurred about 4:30 in the afternoon of November 26, 1960. The pavement was dry, the weather clear, and the visibility good. Mr. Hinds was proceeding east on U. S. Interstate Route 70, a 4-lane highway. The two eastbound and the two westbound lanes are separated (in the area in question) by a concrete median strip about 6½ feet wide and elevated about a

foot above the surface of the adjacent traffic lanes. After an eastbound vehicle passes Columbia's city limit, it travels under the Providence Road overpass. An access ramp runs east from Providence Road and joins the eastbound lanes of Route 70; and at the same time the ramp runs into (or becomes) a third eastbound lane which continues for 1,206 feet where it becomes an exit ramp to Highway 63. South of this third lane is a five-foot shoulder which extends for the entire distance of such third lane. Thus, as one travels east on 70, at the time he passes under Providence Road there are two eastbound traffic lanes; when one reaches the point where the northwest "corner" of the Providence Road access ramp touches and joins eastbound Route 70 there are, in effect three eastbound lanes, the inside lane being 14 feet 8 inches wide, the center lane being 12 feet wide, and the third or south lane being approximately 14 feet 4 inches wide.

At the time in question Mr. Hinds, with his wife as a front seat passenger, intended to or was attempting to pass a truck driven by defendant Allen Kircher when, for a reason much in dispute, his automobile, apparently out of control, swerved onto the median strip, skidded sideways eastwardly (knocking over a metal reflector pole) for a distance of approximately 100 feet and into the inner westbound traffic lane where his automobile was struck by a westbound car.

It was plaintiff's theory, and there was substantial evidence to support it, that his automobile went out of control as a result of Kircher's truck, which had been traveling eastwardly in the south of the two regular eastbound lanes, suddenly and without warning swerving into the inside eastbound lane, making contact with plaintiff's car and thereby causing plaintiff to come into subsequent collision with the westbound car.

It was defendant's theory, supported by substantial evidence, that his truck at all times proceeded east in the south of the two regular eastbound lanes at 35 to 40 miles per hour without veering or changing

course until he reached a place where he turned right into the third or southernmost lane in order to turn off 70 and onto Highway 63; that defendant turned off 70 onto 63 and traveled to his home; that he had no knowledge of any collision or contact either between his truck and plaintiff's car or between plaintiff's car and any other vehicle; and that he knew nothing of any claim that he had been involved in the accident in question until the following day.

Inasmuch as there was a defendant's verdict, we shall hereinafter, in connection with plaintiff's various points, state the evidence pertinent to each from a standpoint favorable to defendant.

Plaintiff contends the trial court erred in giving defendant's contributory negligence instruction 5 based on plaintiff's excessive speed.

Section 304.012 (all section citations herein refer to sections of RSMo 1959 and V. A.M.S.) provides in paragraph 1: "Notwithstanding any speed limits to the contrary, in operating a motor vehicle on a divided limited access highway, through an incorporated area, the same may be driven at the speed provided by law outside of such incorporated areas, except at intersections or approaching or leaving intersections, where traffic is at the time entering or leaving said highway, or in areas where there is a congestion of traffic, at which said places, said rate of speed shall not be in excess of fifty-five miles per hour."

There was evidence that at the time plaintiff and defendant drove their vehicles under the Providence Road overpass a vehicle was traveling down the access ramp toward the highway. Instruction 5 directed that if the jury found that when plaintiff "came alongside the access ramp" there was another automobile traveling down the ramp to enter Highway 70 and that plaintiff saw or in the exercise of the highest degree of care should have seen that automobile and that plaintiff was then traveling and continued to travel at a speed in excess of 55 miles per hour, plaintiff was negligent, and

if that negligence contributed directly to cause the ensuing accident, the verdict would be for defendant.

Plaintiff says there was no substantial evidence that he was exceeding 55 miles per hour at the pertinent time in question. We cannot agree. On the contrary, there was abundant substantial evidence from which the jury reasonably could have found that at the time a vehicle was descending the access ramp toward Route 70, plaintiff's automobile was traveling and continued to travel to the point of the collision at 65 to 70 miles per hour. Plaintiff's argument seems to attach some importance to the fact that two of the witnesses who testified to plaintiff's speed as being between 65 and 70 miles per hour prior to the collision did not observe plaintiff's car until it was skidding sideways eastwardly on the median strip. As we understand, his suggestion is that it was not reasonably inferable that plaintiff was driving at least that fast when the skid began or when plaintiff's car went onto the median strip. It would appear that a jury reasonably could have found that a car which is skidding sideways at 65 to 70 miles per hour was undoubtedly traveling as fast or faster just before the skidding began. Furthermore, the very facts that plaintiff's automobile skidded sideways along the median strip for 100 feet, knocking over a 6′ 8″ high reflector pole, and thereafter into the westbound traffic lane were, standing alone, substantial evidence which would justify a jury finding that plaintiff's speed exceeded 55 miles per hour when he passed the ramp in question.

Plaintiff next contends that even though there was evidence of speed in excess of 55 miles per hour, there was no evidence from which the jury reasonably could have found that the violation of the 55 miles-per-hour speed limit was a proximate cause of the casualty.

Certainly, as plaintiff contends, there is no presumption that the violation of a speed statute is a proximate cause of

an ensuing collision; and proof of a causal connection must be substantial and not based solely upon speculation and conjecture. But plaintiff, it seems to us, has overlooked the fact that the jury was at liberty to believe all or none or any part of any witness's testimony, "just as the jury finds it to be true or false when considered in relation to the other testimony and the facts and circumstances in a case." Burr v Singh, 362 Mo. 692, 243 S.W.2d 295, 298 [4, 5]. Thus, the jury in the present case could have believed defendant's testimony that the truck did not veer from its course in the eastbound lane and, if so, then under plaintiff's own testimony there would have been no contact between the truck and plaintiff's car. Further, the jury could have believed the evidence that plaintiff came up behind an automobile which was following defendant's truck at a fast speed, went around that car and started to pass the truck at a speed of 60 to 65 miles per hour and, as noted, was traveling 65 to 70 miles per hour thereafter. Furthermore, while the evidence was not fully developed, a police officer said he found some skid marks in the south of the two regular eastbound lanes which indicated plaintiff's car may have skidded prior to the time and place where the skid marks made by plaintiff's car began on the south curb of the median strip and extended eastwardly for 100 feet along the concrete divider.

The foregoing facts, if found by a jury, constituted substantial evidence to justify a finding that it was plaintiff's speed alone which caused his car to go out of control and that had he been traveling at 55 miles per hour as required by the statute, instead of at a faster speed, he would have maintained control of his automobile and no collision would have occurred. We reach the same conclusion as stated in Downing v. Dixon, Mo., 313 S.W.2d 644, 650 [4-11], where, in disposing of a similar contention as to lack of proximate cause, the court said, "Under the circumstances here we cannot say, as a matter of law, that no collision would have occurred had Hullet obey-

ed that speed ordinance; * * *." See also Russell v. Kotsch, Mo., 336 S.W.2d 405, 409 [4]; Snyder v. Jensen, Mo., 281 S.W.2d 802, 808, 809.

Plaintiff's next two attacks on instruction 5 have to do with the proper interpretation of the language of the statute, Section 304.-012, supra. The first is that the instruction erroneously directed, in effect, that *if an automobile was traveling down the access ramp to enter Highway 70* at the time plaintiff "came alongside the access ramp," the automobile was "entering said highway." In other words, the court construed this language contained in the statute, "where traffic is at the time entering * * * said highway" to mean that a vehicle "is entering a highway" when it is traveling down an access ramp toward such highway.

■ The parties have cited no case, and we have found none, interpreting the statute here in question. The language used should be given a reasonable interpretation and, if reasonable, one which will not defeat an apparent purpose of the legislature. See Hay v. Ham, Mo.App., 364 S.W.2d 118, 121 [1–3]. We have no doubt that the trial court correctly construed the statute. If the words "entering * * * said highway" meant that a speed limit of 55 miles per hour was imposed only in the event and at the time some part of an approaching vehicle had actually reached or crossed the line forming the south edge of the south lane (of the two regular lanes) of Route 70, the prohibition of the statute would be a vain and useless provision in so far as providing or attempting to provide for the safety of the traveling public. It surely was the purpose of the section to provide for the safety of the traveling public. See Teters v. Kansas City Public Service Co., Mo., 300 S.W.2d 511, 516 [7, 8]. It would often be too late, indeed physically impossible, for an eastbound vehicle to slow to 55 miles per hour if the operator of such a vehicle waited to begin slowing until an automobile proceeding down an access ramp had reached or crossed into the lane in which the eastbound vehicle was traveling. It is our opinion that a reasonable construction of the language in question is that "traffic is at the time entering * * * said highway" when a vehicle is traveling down an access ramp toward that highway.

Plaintiff next contends that inasmuch as Section 304.012, supra, requires a speed limit of 55 only at, or approaching, or leaving, *intersections,* defendant was required "to prove that plaintiff was speeding at an 'intersection.'" Plaintiff points to the cases of Wilson v. Toliver, 365 Mo., 640, 285 S.W.2d 575, 579, and Creech v. Blackwell, Mo., 298 S.W.2d 394, 400, which hold that the area of the "intersection" of highways includes the space common to both highways; and from that premise concludes there was no "intersection" involved under the present facts because there was no space common to both highways. As we understand, plaintiff seeks to support his position by arguing that because one may go down the access ramp in question and travel eastwardly in the third (southernmost) lane and exit at Highway 63, some 1,206 feet distant, without ever having entered either of the two regular eastbound traffic lanes, the access ramp does not intersect Highway 70 and, thus, there is no "intersection" which one could approach, be at, or leave.

■ One of the meanings of "intersection" according to Webster's Third New International Dictionary is "a place where two or more highways join or cross; * * *." Section 301.010(8) defines "intersecting highway" as "any highway which joins another whether or not it crosses the same." The access ramp in question adjoins the outside lane of the two regular eastbound traffic lanes and "joins" Route 70. A motorist, using the access ramp, usually would do so for the purpose of entering one of the regular eastbound lanes, and not for the purpose of using the "third lane" to go from Providence Road to Highway 63 in Columbia. It seems clear to us that there is an "intersection" at the point where

an access ramp "joins" a highway analogous to an "intersection" where a side road runs up to a main highway and stops. Such is commonly known as a "T intersection." See Brumback v. Simpson, Mo., 247 S.W. 2d 635, 637 [1]; Kraft v. Armentrout, Mo. App., 275 S.W.2d 402, 403 [4]. We are of the opinion that the place or area where an access ramp joins a highway mentioned in Section 304.012 is an "intersection" within the meaning of that statute.

■■ Plaintiff's final contention as to instruction 5 is that there was no evidence that Interstate 70 was a limited access highway, and inasmuch as the provisions of Section 304.012, supra, apply only to divided limited access highways the instruction was erroneous in that it did not require the jury to find that essential fact. It is true, of course, as plaintiff contends, that an instruction should require a finding of all disputed essential facts. We do not find any admission or any direct testimony in the record that the highway in question is a limited access highway. It is common knowledge that Interstate 70 is a limited access highway, but if perchance we should not take judicial notice of that fact, we are of the view that the pictures in evidence depicting the entrances and exits to and from the highway in question are some evidence of the fact and, under the circumstances of this case, sufficient evidence of the fact that the highway in the locality of the accident was a limited access highway.

Instruction 6 told the jury that if plaintiff failed to sound his horn before he started to pass defendant's truck plaintiff was negligent, and if that negligence contributed directly to cause the collision, then the verdict would be for defendant. Plaintiff does not attack the form of the instruction but contends there was no substantial evidence that plaintiff failed to sound his horn before starting to pass the truck, and further, that it affirmatively appears that defendant would not have heard such a warning in any event and, consequently, failure to have

sounded the horn was not a proximate cause of the collision.

■ Plaintiff testified that as he traveled eastwardly at the time in question, ahead of him was an automobile and four or five car lengths ahead of such automobile was defendant's truck; that when he (plaintiff) started to pass the automobile he twice blew his horn. He conceded that at his deposition he had stated that it was his best recollection that he did not sound his horn as he started to pass the truck. Thus, plaintiff's own testimony furnished a sufficient basis for a reasonable finding that plaintiff did not comply with Section 304.016 which requires a driver overtaking and desiring to pass a vehicle (under the present circumstances) to sound his horn before starting to pass.

The contention that the failure to sound a horn was not a proximate cause poses a more serious question. Defendant was driving a 2-ton Ford truck equipped with a combination stock and grain bed then loaded with about 14,000 pounds of shelled corn. His brother-in-law was riding with him in the cab. The windows were closed and the radio was on. Both defendant and his passenger testified that as they proceeded under the Providence Road overpass at 35° to 40 miles per hour toward the place where the access ramp joins the highway, they noticed a vehicle proceeding eastwardly down the access ramp; that defendant removed his foot from the accelerator to see what the car on the ramp was going to do. When he discovered that the entering vehicle was slowing he proceeded and thereafter saw, by means of the right-hand cab mirror that the entering vehicle was behind him. Defendant shortly thereafter pulled or turned his truck southwardly into the southernmost of the three lanes in order to exit onto Highway 63. Defendant and his passenger each testified that he did not hear the sound of any horn; that he did not hear the noise of any "crash" such as would be made by the collision of two vehicles; and the passenger testified that he did not hear the

"squealing" of brakes. One of defendant's witnesses, a member of the Columbia police department who happened to be traveling west on 70 near the scene of the accident, testified that he did not see defendant's truck at any time; that the speed of plaintiff's car as it came across the median strip was 65 to 70 miles per hour; that the witness had the windows on his car closed but he clearly heard the noise of the collision between the westbound car and plaintiff's car. He explained, however, that his attention was focused on the fact that a car was skidding sideways along and across the median strip, and, as we read his testimony, he meant that such may have been the reason he was paying attention and thus heard the noise of the collision. He thought a second elapsed from the time he first saw plaintiff's car on the median strip until the crash. Another of defendant's witnesses testified that the westbound automobile which collided with plaintiff's car was traveling at a speed of 65 to 70 miles per hour.

■ There can be no doubt that the collision between plaintiff's car and the westbound automobile was a violent one and there must have been some resulting noise. It is also true that defendant's truck windows were up and that the radio was on and, as noted, neither defendant nor his passenger heard the noise resulting from the collision. On the other hand, a jury reasonably could have found that more than a second elapsed between the time plaintiff had the duty to have sounded his horn and the time of the collision and that during that interval defendant's truck proceeded eastwardly for 50 or 60 feet; that defendant was intent upon leaving Interstate 70 and had no knowledge that his truck or any part thereof had been involved in a collision with or had struck or come in contact with plaintiff's car.

If the jury believed defendant's testimony that he did not at any time swerve his truck

to the left, then under no view of the evidence could plaintiff's failure to have sounded his horn have been a proximate cause of the accident. But the jury was entitled to believe plaintiff's evidence that defendant did swerve his truck to the left and did interfere with plaintiff's attempt to pass the truck which caused plaintiff's car to go out of control, and yet believe that defendant had no knowledge of any such interference. If the jury so found, we properly cannot say, as a matter of law, that if plaintiff had sounded his horn before starting to pass the truck, defendant would not have heard the horn, and that, if he had been so warned, such would not have prevented defendant's swerve to the left and thus have avoided the accident. It follows that it was for the jury to decide whether plaintiff's failure to have sounded his horn was, under all the evidence, a proximate cause of the collision. See Hill v. Torrey, Mo.App., 320 S.W.2d 594.

Plaintiff's other two contentions, that the trial court erred in refusing to give his instructions 10 and 14, are based respectively upon the propositions that there was no substantial evidence of plaintiff's contributory negligence, and no substantial evidence of excessive speed or that speed in excess of the statutory 55 miles-per-hour limit was a proximate cause. What we have said heretofore disposes of plaintiff's contentions in those respects.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.