Ola M. DINTELMAN and Harvey P. Dintelman, Respondents,

v.

Harvey McHALFFEY, Defendant,

and

Burnice B. Cates and Jones Truck Lines, Inc., a Corporation, Appellants.

No. 53355.

Supreme Court of Missouri, Division No. 2.

Dec. 31, 1968.

Cox, Cox, Cox & Moffitt, Dallas W. Cox, William A. Moffitt, Jr., Dallas W. Cox, Jr., St. Louis, for plaintiffs (respondents).

John P. Montrey, St. Louis, for appellants.

PRITCHARD, Commissioner.

The individual defendants, Burnice B. Cates and Jones Truck Lines, Inc., appeal from an order of the trial court awarding plaintiffs a new trial (as to all parties-defendant) on the ground that the jury's verdict was "against the weight of the evidence." These defendants say that the court abused its discretion in awarding a new trial as to them because there was no case made by plaintiff in that Cates' failure to sound a warning before starting to pass the vehicle in which plaintiffs were passengers was not a proximate cause of the collision. They say further that cases holding (Overbey v. Fodde, Mo., 420 S.W.2d 510, and similarly others) that the trial court has discretion to award one new trial on the ground that the verdict is against the weight of the evidence are unsound and should be overruled.

Ola M. Dintelman's claim for personal injuries occasioned by the alleged negligence of all the defendants was for $150,-000. The jury awarded her $7,500 against defendant McHalffey alone, and found for

Cates and Jones Truck Lines. Harvey P. Dintelman's claim was for $50,000 for loss of society and companionship of his wife, Ola, and for his medical expenses incurred on her behalf. The jury gave Harvey a $5,000 verdict against McHalffey, and likewise returned a verdict in favor of Cates and Jones Truck Lines. The order of the court of new trial reinstated plaintiffs' claims against all defendants, in total, $200,000.

Cates, called as an adverse witness for plaintiffs, testified: On November 28, 1964, he was driving a "cab over" International truck, with a 38 or 40 foot van type trailer on behind. The rig was loaded, a total weight of about 38,000 pounds. The vehicle was equipped with Bendix air brakes, and had an air horn on top of the cab which would have emitted a loud enough blast to warn somebody that he was approaching to pass. Cates was enroute from Memphis, Tennessee, north and to his terminal in St. Louis, Missouri, over Interstate 55, 61 and 67 highways. At the time of the collision, about 7:15 or 7:30 a. m., he was traveling on Highway 61–67 near Barnhart or Kohler City, Missouri. The highway surface was asphalt, dry, and there were two northbound lanes and two southbound lanes, divided only by a line. The weather was fair and dry. Cates had seen the other vehicle (a pickup truck) a mile or a mile and a half south of the place of collision when it passed him. Cates' truck was then traveling at a speed of 30 to 35 miles per hour, and was going up a hill. After Cates got to the top of the hill, he again saw the pickup (which had gone out of his sight) a little farther than 150 to 200 yards ahead and in the right-hand curb lane—the same lane Cates was in. He gradually overtook the pickup, and got into the passing lane about 75 feet from the point of collision at about 30 to 35 miles per hour. The pickup was then in the right lane of travel. Cates saw no other signal than the brake light which came on when he was 300 to 450 feet from the point of collision. It was Cates' intention to pass the pickup. He

never did sound the air horn as he moved to the passing lane and as he approached it. The pickup was 20 to 25 feet south of the point of collision when it moved to its left, "not real fast and not real slow." The collision happened at the southern end of a gradual right curve of the highway. The extreme left front of Cates' vehicle struck the extreme left back of the pickup. The fender, headlight and bumper of the truck were damaged. The pickup was almost stopped, to four or five miles an hour. At the time of the collision, all of the pickup was in the lane next to the center of the highway except a couple of feet of the bed, and it was pointing northwest. There was a "Derby" station straight across west from the point of impact, into which the pickup went after spinning around, and it there collided with a parked Falcon stationwagon. Cates had put on the truck's foot brake which applies the brakes to the trailer first, then in seconds to the tractor (to prevent jackknifing). Cates skidded his truck and observed his own skid marks (about 60 or 70 feet before impact and a total of about 130 feet) on the highway, as well as those which the pickup truck made as it spun around.

Highway Patrolman Herman A. Ellenberger investigated the collision after he was notified of it about 8:30 a. m. The pickup truck, driven by McHalffey, was damaged on its rear and the back window. McHalffey told him, "I was traveling in the center lane going to make a left turn into the station when I got hit. I had my signal light on." The brake lights were working on the pickup after the collision. The passengers in the pickup were Ola M. Dintelman, Harvey Dintelman and Vera McHalffey. Cates told him he was traveling at about 40 miles per hour immediately prior to the collision. He found damage on the left front bumper, left front fender and headlight. Cates told him "he was in the right lane and I saw his brake lights come on, so I eased over into the center lane thinking he was going to make a right turn off the highway, and then he pulled

over into the center lane." He determined, from the debris, that the point of impact was close to the center of the pavement on the inside northbound lane. The tractor-trailer made approximately 60 feet of skid marks prior to impact, and 69 feet of skid marks beyond it. There were 63 feet of skid marks leading up to the pickup truck.

Harvey McHalffey testified that he lived in Brooklyn, Arkansas. On the date of the collision he owned a 1962 Chevrolet pickup, in which were riding with him his wife, and Harvey Dintelman and his wife. They had left Brooklyn about 2:00 o'clock in the morning, and the collision happened between 7:30 and 8:00 a. m., when he started to turn off to a station across the highway and a truck hit him, "that's all I know." He had been traveling north on Highway 61–67, and intended to turn off to the left at a Derby station to rest and thereafter let Harvey (Dintelman) drive. He never did hear a horn sound before the collision. He was in the left lane at the time of the collision, at 5 or 6 miles per hour (having slowed gradually), and had been in that lane for a half mile to a mile, at a speed of around 40 or 45 miles per hour. He had passed defendant's truck about a mile and a half prior, and was then in the lane next to the center. The truck was then in the lane next to the shoulder. McHalffey did not go back to the shoulder lane after he passed, and he did give a signal of his intention to turn left a hundred yards back from the point of collision. He was then not aware that there was a truck behind him, did not hear a signal or that any brakes were applied. The impact knocked the bed of the pickup into the cab, bent it, and tore up the tail gate. A couch being carried in the bed was thrown out. The pickup had tail lights on both sides and directional signals which worked. His directional signal lights and brake lights worked after the collision. There was no damage to the sides of his pickup truck.

Vera McHalffey testified that she was a passenger in the pickup at the time of the collision. She had no warning that the collision was going to happen, no horn and no brakes squealing. She was seated next to her husband, Mrs. Dintelman was next to her, and Mr. Dintelman was seated on the far right side. Her husband was driving in the left-hand lane next to the center, and she was sure he remained in that lane after he passed Cates' truck. She heard the turn signal clicking.

Ola M. Dintelman testified that she was a passenger in the pickup truck being driven by McHalffey on November 28, 1964. She bent over to pick up her purse and while so engaged the tractor-trailer hit them. She never heard a horn sounding or brakes squealing. The pickup truck had been in the lane next to the center line for around 100 yards, or a little more (at one place she said 150 to 200 yards), before the collision occurred, during which time she heard the turn signal clicking. The speed of the pickup was reduced gradually to 5, 6, or 7 miles per hour "because we were fixing to turn."

Harvey Dintelman testified that the pickup truck was on the inside lane next to the center line for quite a little ways prior to the collision, and Mr. McHalffey stayed in that lane, to the best of his knowledge, after he passed Cates' truck. He was watching as they drove along and McHalffey did not, when they were close to where the collision occurred, go from the shoulder lane to the lane next to the center. There was a gradual slowing to 7 to 10 miles per hour, in order to make the left turn. "Well, I just don't know whether he pulled over there or not, or stayed in the inside lane [after they passed the truck]. I think he stayed on the inside lane all the time."

Mrs. Dean Collins was an eyewitness to the collision from her vantage point sitting in a car at the Derby station. Her version of the incident was that she saw the pickup in the far side of the lane and the big truck was in the middle (inside) lane. The pickup came across in front of the big truck which hit it. As Mrs. Collins looked, it was just a few seconds until the actual

impact. The (little) pickup truck suddenly started across the lane straight, kind of angling and was in front of the big truck a little bit.

Section 304.016 subd. 1 (1), RSMo 1959, V.A.M.S., provides: "An operator or driver overtaking and desiring to pass a vehicle shall sound horn before starting to pass except in cities where prohibited by ordinance." It is admitted by Cates that he intended to pass McHalffey's pickup truck and that he did not at any time sound the horn on the tractor-trailer.

■■ It is highly doubtful that plaintiffs can rely upon the testimony of Cates and Mrs. Collins that McHalffey's pickup truck was in the right-hand curb (or shoulder) lane before it started the turn to the left to enter the Derby station across the highway. That version is directly contrary to the rather definite, positive, testimony of both plaintiffs and the McHalffeys that McHalffey had been driving in the left lane for 100 yards or more, gradually slowing and signaling, prior to a contemplated left turn into the Derby station. Compare Elliott v. Wescoat, Mo., 336 S.W.2d 649, 651 [1, 2], "That is to say, plaintiff could not recover on a theory supported only by defendant's evidence which was directly contrary to her own testimony. Miller v. Riss & Co., Mo., 259 S.W.2d 366, 370 [2, 3]." See also Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600, 604; Hecker v. Schwartz, Mo., 426 S.W. 2d 22, 25. Plaintiffs, however, are not bound by Cates' and Mrs. Collins' testimony as to McHalffey's lane position on the highway. The conflicts in the testimony were for the jury to determine. Robbins v. Robbins, Mo., 328 S.W.2d 552, 556 [7–13]. Thus, the question is whether Cates' failure to sound his horn when approaching McHalffey from the rear and intending to pass (being negligence in violation of the statute, Hinds v. Kircher, Mo., 379 S.W.2d 607, 612 [10]; Larsen v. Webb, 332 Mo. 370, 58 S.W.2d 967, 970, 90 A.L.R. 67) was a proximate cause of the collision. Cates and Jones Truck Lines contend that if the McHalffey-Dintelman version of the facts is accepted, the collision would have occurred whether or not a horn was sounded by Cates. The test as to whether a negligent act is a proximate cause of the result has been simply stated to be whether "the facts show that the injury would not have occurred in the absence of the negligent act." Dixon v. Wabash R. Co., Mo.App., 198 S. W.2d 395, 398 [4–9]. See also James v. Sunshine Biscuits, Inc., Mo., 402 S.W.2d 364, 375 [2–4]. In the case of Hill v. Torrey, Mo.App., 320 S.W.2d 594, the issue was whether plaintiff's failure to sound his horn in following and passing a tractor and defendant's forward pickup truck was contributory negligence as a matter of law, and was the proximate cause of the collision with the left-turning pickup truck. It was there said that the issue of proximate cause is ordinarily a jury question, and "Thus the fundamental question for decision by the trial court and this court is whether it can be said as a matter of law that if plaintiff's driver had sounded the horn before passing the tractor-wagon, the collision with the pickup would not have occurred." 320 S.W. 2d 596. Under the facts there the court was unwilling to so hold, saying, "Whether, if the plaintiff's driver had sounded his horn, the warning would have been heard by defendant; and whether the pickup was then in a position on the highway that the defendant could change the course thereof in time to avoid the collision, are such facts, in our opinion, as to require the submission of the issue of proximate cause to the jury." 320 S.W.2d 597 [4]. See also the case of Hinds v. Kircher, supra, holding that it was for the jury to decide whether plaintiff's failure to have sounded his horn was, under all the evidence, a proximate cause of the collision.

■ Under plaintiffs' version of the facts that they were riding with McHalffey who was driving in the left or center line lane when struck from the rear, and they had been in that lane for more than 100 yards prior to impact, Cates had a duty to warn them by sounding his horn (which

could have been heard) of the danger he was creating by coming upon them at a sustained speed when McHalffey was slowing. As aforesaid, the horn on the truck cab was not sounded at all. It is not for this court to say that had a proper and timely warning been given by Cates he would not have influenced the situation of danger in any way. At least, from all the facts and circumstances, the jury could reasonably have found that McHalffey could have turned his pickup more sharply to the left away from Cates' path; or he could have speeded up his vehicle and cleared the left lane for Cates' oncoming tractor-trailer; or he could have, after warning, given a signal of his intention to turn left (if the jury found that no turn signal had been made by McHalffey) and thereby permitted Cates to avoid the collision as by stopping, slackening speed, or swerving to the clear right lane. Thus it is apparent that the failure to sound the truck's horn by Cates could have been found by the jury to have been a proximate cause of the collision and plaintiffs' damages, and the trial court did not abuse its discretion in awarding plaintiffs a new trial as to all parties.

Section 510.330, RSMo 1959, V.A.M.S., and Civil Rule 78.01, V.A.M.R., supplementing this legislative enactment, provide for the granting of new trial by trial judges, and specifically, "Only one new trial shall be allowed on the ground that the verdict is against the weight of the evidence." Whatever be the reasons underling the legislative and court policy of granting to a trial judge the discretionary power to award one new trial on said ground, defendants Cates and Jones Truck Lines advance no persuasive reasons and cite no authority as to why this long-standing statute and rule should now be changed. See the legislative and judicial history of this rule of policy extensively set forth in Clark v. Quality Dairy Company, Mo., 400 S.W.2d 78, in which the court declined to adopt the same change in policy here urged.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.