**Tom KING, Appellant,**

v.

**Edward H. MORGAN, Respondent.**

**No. WD 47896.**

Missouri Court of Appeals,
Western District.

March 8, 1994.

J. Kirk Rahm, Warrensburg, for appellant.

Robert G. Russell and J. Christopher Spangler, Sedalia, for respondent.

Before BERREY, C.J., P.J., and KENNEDY and ELLIS, JJ.

ELLIS, Judge.

On the morning of April 29, 1991, Tom King and his assistant Kent Bechhold were doing surveying work on the south shoulder of Missouri Highway 58 in Johnson County.

That same morning, Edward Morgan was headed east on Highway 58 driving a tractor-trailer unit carrying a bulldozer with a blade some 12 feet wide. In order to keep the dozer blade from hanging over the center line, and to enable him to use the driver's side rear view mirror, earlier that morning Morgan had loaded the bulldozer in such a way that its blade extended some 29½ inches over the right hand side of the tractor-trailer. As Morgan passed by at 40 miles per hour, King, who was facing away from Morgan's oncoming vehicle and looking through his surveyor's transit at a rod held by Bechhold, was struck in the head, left shoulder, and left arm by the protruding bulldozer blade. He suffered severe injuries requiring extensive surgery and hospitalization.

King filed suit against Morgan. In his answer, Morgan alleged that King was contributorily negligent for failing to keep a careful lookout, failing to give an adequate warning of his presence and purpose, and failing to walk upon the proper shoulder of the roadway. Prior to trial, the court granted Morgan's motion to dismiss Count I of King's petition, which alleged that Morgan was strictly liable for King's injuries. At trial, Morgan admitted that he saw King ahead of him a quarter of a mile away and never lost sight of him as he approached. He also testified that he realized that the dozer blade extended over the south shoulder of the highway. He further acknowledged that he never sounded his air horn, slowed down, or attempted to stop his vehicle as he got closer to King, explaining that his original plan to avoid King by moving over into the westbound lane was foiled by the sudden, unexpected appearance of an oncoming vehicle in that lane.

To support his contributory negligence defense, Morgan showed that although King had warning signs and traffic cones in his truck, he had not set them out on the roadway to warn oncoming motorists of his presence. King testified that he had not used the signs and cones that morning because he was working on the shoulder, not the highway itself. He also testified and Morgan did not deny that both he and Bechhold were wear-

ing bright orange vests and hats at the time of the accident.

King proffered two jury instructions submitting negligence *per se* as a basis for recovery, both of which were refused by the trial court. King's claim was eventually submitted to the jury on a theory of "ordinary" or common law negligence and Morgan's defense of comparative fault. Nine of the twelve jurors returned a verdict assessing 100% of the fault to King. The trial court accepted the verdict and assessed costs against King. King's timely motion for a new trial, including his request for a new trial under Rule 78.01 on the ground that the jury's verdict was against the weight of the evidence, was overruled, and he appeals. We reverse and remand for a new trial.

King briefed four points on appeal. In his second point, King claims the trial court erred in not submitting either of his proffered jury instructions based on Morgan's *per se* negligence in violating § 304.170.1, RSMo Supp.1991.[1] This statute says, in relevant part: "No vehicle operated upon the highways of this state shall have a width, including load, in excess of ninety-six inches...." However, "for good cause shown and when the public safety or public interest so justifies," § 304.200.1 authorizes the chief engineer of the Missouri Department of Highways and Transportation to issue special permits for "vehicles or equipment exceeding the limitations on width ... herein specified...." Section 304.200.3 provides that rules and regulations for the issuance of such permits shall be prescribed by the state Highways and Transportation Commission. Those rules have been promulgated and can be found at 7 CSR 10–2.010.[2]

■ Since § 304.240, RSMo 1986, makes any violation of § 304.170 a misdemeanor punishable by a fine of not less than five dollars, confinement in the county jail for not more than a year, or both, § 304.170.1 is a penal statute. In paragraph 2(i) of Count II of his petition, King pleaded § 304.170.1 as a standard of care. A penal statute may be pleaded as a standard of care in a negligence action if (1) The injured party is in the class of persons for whose protection the statute was enacted; and (2) The statute was enacted to protect persons or property, conserve public health, or promote public safety. *Moore v. Riley,* 487 S.W.2d 555, 558 (Mo. 1972); *State ex rel. Wells v. Mayfield,* 365 Mo. 238, 246–47, 281 S.W.2d 9, 13 (banc 1955). If a penal statute meets these criteria, a violation of that statute, as in the case of a non-penal statute, constitutes actionable negligence *per se* if the following four elements are met: (1) There was, in fact, a violation of the statute; (2) The injured plaintiff was a member of the class of persons intended to be protected by the statute; (3) The injury complained of was of the kind the statute was designed to prevent; and (4) The violation of the statute was the proximate cause of the injury. *Eckert v. Thole,* 857 S.W.2d 543, 545 (Mo.App.1993).

■ We begin our inquiry by determining whether King properly pled § 304.170.1 as an applicable standard of care in his action for negligence.

*Was King in the class of persons for whose protection § 304.170.1 was enacted?*

Chapter 304, RSMo, is a smorgasbord of statutes regulating motor vehicle traffic. Interpreting various statutes now contained in Chapter 304, the Court in *Bowman v. Kansas City,* 361 Mo. 14, 28, 233 S.W.2d 26, 35 (banc 1950), observed: "The matter of the control of such motor vehicles when entering or leaving public highways, their movement on the highways, ... and the regulation and control of motor vehicle traffic generally is referable to the police power, as being directly connected with public safety and welfare." As a member of the general public, King was clearly within the class of persons for whose

---

1. Unless noted otherwise, all statutory references are to RSMo Supp.1991, which was in effect at the time of the accident.

2. King properly introduced this administrative regulation into evidence at trial. *See Prokopf v. Whaley,* 592 S.W.2d 819, 823 (Mo. banc 1980) (although reviewing courts cannot take judicial notice of an administrative rule or regulation, evidence of this nature "can become of record by formal identification, offer and receipt" into evidence).

protection the General Assembly enacted § 304.170.1.

### Was § 304.170.1 enacted to protect persons or property, conserve public health, or promote public safety?

In light of *Bowman*, this is somewhat obvious. Furthermore, in *Park Transp. Co. v. Missouri State Highway Comm'n*, 332 Mo. 592, 60 S.W.2d 388 (banc 1933), our Supreme Court upheld the constitutionality of § 7787, RSMo 1929 (as amended in 1931), which subsequently became § 304.170. In so doing, it noted: "The State has the right to regulate and control the movements of motor vehicles over its highways, and may exercise it in the interest of public convenience and safety...." 332 Mo. at 599, 60 S.W.2d at 390; *see also Dinger v. Burnham*, 360 Mo. 465, 469, 228 S.W.2d 696, 699 (1950) (the purpose of statutes regulating vehicular traffic on state highways is to promote public safety).

■ Having established that King properly pled § 304.170.1 as an applicable standard of care, we now determine whether he proved actionable negligence based on Morgan's violation of that statute.

### Did Morgan violate § 304.170.1?

■ The jury, not the trial court, should determine the existence of operative facts showing the defendant's violation of the statute. *Beezley v. Spiva*, 313 S.W.2d 691, 695–97 (Mo.1958). However, in deciding whether a negligence *per se* instruction is proper, the trial court is authorized to make a threshold determination as to the sufficiency of the plaintiff's proof that a violation has occurred. *See Monteer v. Prospectors Lounge, Inc.*, 821 S.W.2d 898, 900–01 (Mo.App.1992). "To determine whether plaintiff[ ] made a submissible case, we review the evidence and sensible inferences in the light most favorable to plaintiff[ ]." *Bentley v. Crews*, 630 S.W.2d 99, 101 (Mo.App.1981).

The trial testimony conclusively established that Morgan's vehicle, including load, was at least 11 feet (or 132 inches) wide. However, Morgan argues he was not in violation of § 304.170.1 because the bulldozer being transported was used for agricultural and road building purposes. He cites § 304.170.-9(1) (now § 304.170.12(1), RSMo Supp. 1993), which says: "Except as hereinafter provided, these restrictions shall not apply ... to vehicles temporarily transporting agricultural implements or implements of husbandry or roadmaking machinery...." Morgan reasons that since he falls under this exception, he did not violate § 304.170.1 and the trial judge correctly refused King's proffered negligence *per se* instructions.

■ In a negligence *per se* case, the applicability of the statute said to be violated by the defendant is a matter of law for the court. *Derboven v. Stockton*, 490 S.W.2d 301, 315 (Mo.App.1972). We reject Morgan's claim that he was exempt from complying with § 304.170.1 by virtue of § 304.170.9(1) because Morgan's tractor-trailer unit was not "temporarily transporting" the bulldozer at the time of the accident.

■ In the *Park* case cited earlier, the Court also elucidated the meaning of § 7787 (now § 304.170), which exempted " 'vehicles temporarily transporting agricultural implements or roadmaking machinery' " from the length limitations established therein. 332 Mo. at 597, 60 S.W.2d at 390 (quoting Laws of Mo.1931, p. 265). Interpreting the phrase "temporarily transporting," the Court said:

> The expression 'temporarily transporting' as used in the statute is a definition, a term of legal signification, to be interpreted as a matter of law.... [It] refers to the use made of the highways, and implies that the use in any particular instance is of short duration and frequency as compared with the ordinary use of the highways by motortrucks, with a corresponding limitation of interference with other traffic and of wear and strain on the highways.

332 Mo. at 602, 60 S.W.2d at 392. The Court held that since the appellant was regularly "engaged in hauling road material to be used in the construction of public highways to various points of construction.... in the interest of [his] own private business," there was "no showing that appellant's transportation of overlength materials [came] within the purview of the statutory exception," despite his contentions that such hauls were

"occasional" and "temporarily necessary." *Id.*

The reasoning and holding in *Park* apply with equal force in this case. On the day of the accident, Morgan was moving the bull-dozer from "the Smith farm up west of Holden," where he had "hired it out," to another job in the "Warrensburg area." The trial testimony also showed that Morgan had regularly hauled bulldozers and other heavy equipment to job sites throughout the entire 45 years or so he had been in the "dirt construction" business. We therefore conclude that at the time of the accident, Morgan was not "temporarily transporting" the bulldozer as that phrase is used in § 304.-170.9(1).

■ Morgan also argues he was not in violation of § 304.170.1 because he had a special over-dimension permit from the Missouri Department of Highways and Transportation authorizing him to transport loads up to 12 feet, 4 inches wide.[3] If his permit had been valid at the time of the accident, we would agree. However, at the time of the accident, Morgan's special overwidth permit was void because his vehicle was not in compliance with 7 CSR 10–2.010(10)(A). This regulation says that vehicles with loads more than 10 feet, 6 inches wide must have two large (at least 7 feet long by 18 inches high) yellow signs with black letters reading "OVERSIZE LOAD"—one on the front, and one on the rear. Morgan stipulated that his vehicle (which, as we noted earlier, was at least 11 feet wide, including load), had no such signs. The regulation also says that "[r]ed or orange fluorescent flags in good condition with a minimum size of eighteen inches (18″) square must be displayed at the extreme ends or projections of all overdimension loads. . . ." Morgan also stipulated that he had only one orange flag, and that was on the left or driver's side of the bulldozer blade farthest away from King.[4]

These violations voided Morgan's permit. According to 7 CSR 10–2.010(3)(A), "[t]he permittee agrees to certain conditions when a permit is issued. . . ." One of those conditions, a copy of which was physically attached to the permit issued to Morgan, is set forth in 7 CSR 10–2.010(3)(A)(6): "[A]ny operation not made in *strict compliance with the permit . . . is unlawful and renders the permit void.*" (Emphasis added.) In addition, 7 CSR 10–2.010(7), which governs annual blanket permits like the one issued to Morgan, expressly provides: "Violation of a blanket permit shall be cause for *automatic revocation* of the current blanket permit and could result in loss of the privilege of obtaining future blanket permits." (Emphasis added.)

Morgan's special overwidth permit was simply a legislatively authorized substitute for compliance with § 304.170.1. Since that permit was void at the time of the accident, Morgan was not otherwise exempt from the width restrictions by virtue of § 304.170.9(1), and Morgan's vehicle, including load, was in excess of 96 inches in width, King made a submissible case that Morgan violated § 304.170.1.

*Was King a member of the class of persons intended to be protected by § 304.170.1?*

This element was established above.

*Were the injuries suffered by King the kind § 304.170.1 was designed to prevent?*

■ As Morgan's vehicle drove by him, King, who was standing on the shoulder of a Missouri highway, was seriously injured

3. The permit, which was granted pursuant to § 304.200.1, recites that it is an annual "blanket [overwidth] permit for the movement of equipment on soil conservation work only." The regulation governing such permits, 7 CSR 10–2.010(7)(B)(3), defines soil conservation work as "erosion control terracing, timber and brush clearing and excavating ponds." Indeed, Morgan testified at trial that most of his work consisted of "building terraces and ponds and that sort of agricultural stuff." He did not possess or attempt to obtain an overwidth permit "for the movement of farm implements" or "roadbuilding machinery," even though such permits were available pursuant to, respectively, 7 CSR 10–2.010(7)(A)(2) and 7 CSR 10–2.010(7)(A)(4).

4. Morgan's permit recited that it was subject, *inter alia*, to "Special Requirement #2." This requirement, a copy of which was physically attached to the permit, recapitulates the provisions of 7 CSR 10–2.010(10)(A) regarding fluorescent warning flags and oversize load signs.

when the protruding bulldozer blade struck him on the back of the head and the left shoulder and arm. Clearly those injuries were of the general type § 304.170.1, which establishes maximum width limitations for vehicles operated on state highways, was designed to prevent. Any other conclusion would be in conflict with the obvious legislative intent and purpose behind § 304.170.1 and the other statutes contained in Chapter 304. *See also* 7 CSR 10–2.010 (whose stated purpose is "to provide for public safety and to prevent damage to public property").

### *Was Morgan's violation of § 304.170.1 the proximate cause of King's injuries?*

██ In determining what constitutes the proximate cause of an injury, the same principles apply whether the alleged negligence is violation of a statutory duty or violation of a duty imposed under general principles of law. *Larsen v. Webb,* 332 Mo. 370, 378, 58 S.W.2d 967, 970–71 (1932). "The simplest test for proximate cause is whether the facts show that the injury would not have occurred in the absence of the negligent act." *Martin v. City of Washington,* 848 S.W.2d 487, 493 (Mo. banc 1993). Since the eastbound lane of Highway 58 was 10 feet wide at the site of the accident, it is abundantly clear King would not have been injured if Morgan's vehicle, including its load, had not exceeded 96 inches (8 feet) in width, the maximum legal width under § 304.170.1.

██ Taking King's alleged contributory negligence into account does not change this result. In *Floyd v. St. Louis Pub. Serv. Co.,* 280 S.W.2d 74 (Mo.1955), the Court enunciated this oft-cited test for proximate cause in such cases:

> Generally, it is sufficient to constitute proximate cause that the negligence

charged was the efficient cause which set in motion the chain of circumstances leading up to the injury. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrences, the injury appears to be the reasonable and probable consequences of the act or omission of the defendant. The negligence of the defendant need not be the sole cause of the injury. It is sufficient that it be one of the efficient causes thereof, without which the injury would not have resulted. A party is held liable if his negligence, combined with the negligence of others, results in injury to another.

*Id.* at 78. King made a sufficient showing that under the circumstances, Morgan's *per se* negligence in operating an overwide vehicle on Highway 58 was the efficient cause of his injuries. Or, to put it another way, King made an adequate case that his injuries were the reasonable and probable consequence of Morgan's negligent action in driving such a vehicle. Under either test, King made a submissible case that Morgan's violation of § 304.170.1 proximately caused his injuries.

In short, we hold that King demonstrated facts and circumstances sufficient to justify giving the jury a negligence *per se* instruction. The trial court erred in refusing to instruct on negligence *per se* and for that reason we must reverse and remand for a new trial.[5] *Washington Univ. v. Aalco Wrecking Co., Inc.,* 487 S.W.2d 487 (Mo. 1972).

██ King raises one other issue we must address. He claims the trial court erred in dismissing Count I of his second amended petition for failure to state a claim upon which relief can be granted. In essence, this count alleged that Morgan was *strictly liable*

---

5. Missouri courts have allowed plaintiffs making submissible cases of both common law and *per se* negligence to offer separate jury instructions on each theory. *See Dickerson v. St. Louis Pub. Serv. Co.,* 365 Mo. 738, 286 S.W.2d 820 (banc 1956); *Sayers v. Haushalter,* 493 S.W.2d 406 (Mo.App. 1973). They have also permitted such plaintiffs to offer a single instruction disjunctively submitting both theories of negligence. *Lenz v. Seibert,* 259 S.W. 829 (Mo.App.1924). As King is entitled to only one recovery for his injuries, should he submit on both theories, caution should be exercised in instructing the jury so as to avoid a duplicative or overlapping damage verdict.

If the disjunctive approach is used, care should be taken in drafting to ensure that "conduct" is referred to at the appropriate point in the *per se* negligence part of the instruction, and "negligence" is referred to at the appropriate point in the common law negligence portion of the instruction, as shown in the last paragraphs of, respectively, MAI 17.17 and 17.02 (4th ed.1991).

for King's injuries by virtue of 7 CSR 10–2.010(3)(A)(1), which reads:

> The applicant for permit and the permittee named therein agrees to assume full responsibility for injury to persons or damage to public or private property, including highway facilities, caused by the movement of the vehicle or its load under the special permit involved.

The trial court properly dismissed this count. Requiring a permittee "to assume full responsibility for injury ... or damage ... caused by the movement of the vehicle or its load under the special permit involved" in no way amounts to imposing *liability without fault.* A review of 7 CSR 10–2.010 in its entirety shows that this language was intended to serve as an agreement to the effect that the Missouri Highways and Transportation Commission is to be relieved from any and all liability for personal injury or property damage arising out of an accident involving a vehicle for which a special permit has been issued, *not* to impose strict liability upon the permittee. *See* 7 CSR 10–2.010(2) (requiring blanket permit holders to carry at least $50,000 in combined personal injury and property damage liability insurance "for the entire period" of the permit); 7 CSR 10–2.010(3)(A)(2) (if the permit prescribes routing for the vehicle, permittee agrees to hold Commission harmless from any and all claims by anyone "having an interest in either the vehicle, the load or other property involved in the movement over the route prescribed in the permit"); 7 CSR 10–2.010(3)(A)(3) (permittee must indemnify Commission for any sums it "may be required to expend in defense of any claims or actions for damages," including those "arising out of the movement, under ... a special permit, of a vehicle or load over the route prescribed" by the Missouri Highway and Transportation Department).

Furthermore, since permittees would be fully liable for all accident-related damages whether or not they complied with the various safety measures required by 7 CSR 10–2.010, the interpretation urged by King might reduce the incentive to comply with those requirements and make the remainder of the regulation mere surplusage. King's interpretation would also change the standard of legal liability for persons involved in accidents while operating over-dimension vehicles on the highways from *negligence* to *strict liability.* This is most certainly not what the General Assembly intended when it enacted § 304.200.1, authorizing special over-dimension permits, or § 304.200.3, allowing the Commission to promulgate rules and regulations for the issuance of such permits. Since the averments in Count I of King's petition "invoked no substantive law which would entitle [him] to relief," the trial court did not err in dismissing that count for failure to state a claim. *Asaro v. Cardinal Glennon Memorial Hosp.,* 799 S.W.2d 595, 600 (Mo. banc 1990). Point denied.[6]

The judgment is reversed and the cause is remanded for a new trial.

All concur.

---

**6.** King's brief also raises two other points of trial court error. Because his first and second points are dispositive of his appeal, we need not further lengthen this opinion by addressing them.